THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID ROBINSON | : | CIVIL ACTION |
| | : | NO. 10-7165 |
| v. | : | |
| | : | |
| CORIZON HEALTH, INC., et al. | : | |

| | | |
|---|---|---|
| DAVID ROBINSON | : | CIVIL ACTION |
| | : | NO. 12-1271 |
| | : | |
| v. | : | |
| | : | |
| PRISON HEALTH SERVICES, INC. et al | : | |

O'NEILL, J.                                                                              March 30, 2016

### MEMORANDUM

Now before me in these consolidated actions[1] is a motion to dismiss plaintiff David

Robinson's claims by defendants Corizon Health, Inc., Richard Hallworth,[2] Bruce Blatt, M.D.,

Margarita McDonald, M.D., Richard Kosierowski, D.O., Richard Stefanic[3], M.D., John Zaro,

M.D., Raymond Machak, P.A., and John Does and Jane Does (the medical defendants).[4] Dkt.

---

[1]     Unless otherwise noted, references to documents by Docket Number in this opinion are to documents filed in Civil Action Number 10-7165.

[2]     On July 7, 2014, plaintiff represented to the court that he would "not pursue" his claims against Hallworth or his "claims against Defendant, Board of Directors – CORIZON. . . and Hale." Dkt. No. 59 at ECF p. 3.  He also represented that he would "not pursue an[y] additional claims against the Commonwealth of Pennsylvania and the Commonwealth of Pennsylvania Department of Corrections, Shaylor and Moore." Id.

[3]     Plaintiff has conceded that Stefanic has not been properly served.  See Dkt. No. 59 at ECF p. 2.

[4]     On June 2, 2014, I dismissed plaintiff's claims against defendants Michael Wenerowicz, Joseph Korsniak, Wendy Shaylor and Robert Wolff (the DOC defendants).  See Robinson v. Prison Health Services, Inc., No. 10-7165, 2014 WL 2452132 (E.D. Pa. June 2, 2014).  Plaintiff was granted leave to "file an amended complaint on or before Monday, June 23, 2014" with leave to amend only:  (1) "his 8th amendment claims against [the DOC] defendants to the extent he can allege facts demonstrating the personal involvement of the moving defendants in the diagnosis, treatment and care of his kidney cancer; (2) his claims of conspiracy

No. 61.  Also before me is plaintiff's response to the medical defendants' motion.  Dkt. No. 72.

For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

Plaintiff is an inmate serving a life sentence in the custody of the Pennsylvania

Department of Corrections.  In plaintiff's operative complaint, his 74-page first amended

complaint in Civil Action Number 10-7165, Dkt. No. 45, plaintiff asserts claims against moving

defendants for:  (1) alleged violations of his constitutional rights, (2) negligence, (3) intentional

infliction of emotional distress, and (4) "conspiracy under the color of state law to violate

plaintiff's constitutional civil, and other state and federal rights;" and a claim against Corizon

only for breach of contract.  Dkt. No. 45.  Plaintiff seeks "Declaratory Relief declaring that all

Defendants' actions . . . are unconstitutional;" "Injunctive Relief barring all Defendants from

violating his constitutional rights in the future," monetary "damages in an amount not less than

$500,000," and "punitive damages in an amount not less than $500,000 . . . ."[5]  Dkt. No. 45 at

ECF p. 73-74.

---

against the DOC defendants "to the extent he can allege specific actions of defendants committed
in creating and furthering the conspiracy," and (3) his state law claims against Korszniak and
Wolff "to the extent he can allege sufficient facts to satisfy the Twombly pleading requirements
as to each element of the prima facie case of Robinson's state law claims."  Id. at *9.  Plaintiff
did not thereafter file an amended complaint.

On January 21, 2015, having received no response to the medical defendants' motion to
dismiss (i.e., the motion now under consideration), I dismissed plaintiff's consolidated actions
for failure to prosecute.  See Dkt. No. 68 in Civ. A. No. 10-7165 and Dkt. No. 50 in Civ. A. No.
12-1271.  Plaintiff's counsel then sought to reopen the actions, asserting that he had been
"seriously ill and was unable to assist the plaintiff in prosecuting his complaint."  Dkt. No. 70 at
ECF p. 2.  I granted plaintiff's motion to reopen the actions on September 15, 2015 and directed
plaintiff to respond to the instant motion by October 15, 2015.  See Dkt. No. 71.  Plaintiff filed
his response on October 15, 2015.  Dkt. No. 72.

[5]      Plaintiff's references to $500,000 are in violation of Rule 5.1.1 of the Local Rules
of Civil Procedure.  See E.D. Pa. Local R. Civ. P. 5.1.1 ("no pleading asserting a claim for
unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but
such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court").

In these consolidated actions, he asserts claims regarding his dissatisfaction with the medical treatment which he has received.  Specifically, plaintiff alleges he suffered harm  to his arm and to his kidneys while he was incarcerated at SCI-Graterford, as is further set forth below.

## I.      Alleged Arm Injury

Plaintiff alleges that he "lives in excruciating pain and suffers constantly due to [an] injury to his deltoid muscle and nerves . . . ."  Dkt. No. 45 at ECF p. 55.  He claims that the injury to his deltoid was caused by a hepatitis B vaccination which he was given on or about March 29, 2003 "by a member of the CORIZON medical staff that included Drs. Blatt, McDonald, Kosierowski, Stefanic, Zaro, P.A. Machak and P.A. C. Masino[6] and the "Does."  Id. at ECF p. 53.  He contends that he "developed severe pain and swelling in the area of the injection" shortly after receiving the vaccine.  Id.

## II.     Kidneys

Plaintiff alleges that defendants failed to provide him prompt and adequate medical treatment for his kidney cancer.  He was diagnosed with cancer in both of his kidneys on March 9, 2011 when "he was examined by a non-prison doctor for the first time."  Dkt. No. 45 at ECF p. 48.  Prior to that, plaintiff had been diagnosed with high blood pressure "[i]n the summer of 2000 . . . ."  Id. at ECF p. 37.  He was examined at least twice in 2005 and again in 2006 "for the

---

[6]     Although the operative complaint names Masino as a defendant, Dkt. No. 45 at ECF p. 8, he has not been served, a fact which plaintiff conceded on July 7, 2014.  See Dkt. No. 59 at ECF p. 2.  Pursuant to Federal Rule of Civil Procedure 4(m), plaintiff has 120 days from the filing of his complaint to serve process on a defendant. See Fed. R. Civ. P. 4(m).  Plaintiff has not requested an extension of time to execute service of process on Masino or Stefanic and has not shown good cause for his delay. Thus, I will dismiss without prejudice plaintiff's claims against them.  See MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1096 (3d Cir. 1995) (the district court must allow for extensions of time under Rule 4(m) where good cause for delay has been shown, but absent a showing of good cause the district court's decision to dismiss a case without prejudice or to extend time of service is discretionary), citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

purpose of monitoring his high blood pressure and kidneys to determine how [he] was responding to the cocktail of medicines" that he had been prescribed.  Id. at ECF p. 40.  On March 15, 2006, he claims that a blood test to screen his kidney function revealed that he had a microalbumin result which was nearly three times the highest normal level.  Id. at ECF p. 41. Plaintiff alleges that he "asked Dr. Kosierowski whether he would suffer kidney cancer as a consequence of the cocktail of medicines that he and his colleagues had prescribed" but that the doctor "refused to answer" him.  Id. at ECF p. 42.  He alleges that he believes that the doctor "knew at that time that [plaintiff] had kidney cancer, or would develop cancer within a short period of time," as did the other medical defendants who "[h]ad access to [the] same test results and data as Dr. Kosierowski."  Id.  He further asserts that the defendants "allowed his kidney cancer to grow to the size of [a] grapefruit or softball . . . ; . . . destroy his right kidney; . . . . [and] metastasize into his left kidney."  Id.  Plaintiff alleges that his right kidney was removed on May 24, 2011 and that he was supposed to have surgery on his left kidney on August 16, 2011. Id. at ECF p. 49-50.  He claims that his second surgery was "cancelled" and that he "believes that the DOC refused to pay for it because of his age, gender, race and the fact that he is serving a life sentence."  Id. at ECF p. 50.  He alleges, however, that the second surgery ultimately occurred on September 27, 2011.  Id.

Plaintiff alleges that the medical defendants "refused to take the step of preventative medicine because they receive financial bonuses for not sending inmates, such as Mr. Robinson to outside-of-prison medical centers and doctors . . . ."  Id. at ECF p. 44.  Plaintiff asserts that defendants "refused to perform radiographic testing to determine the source and scope of [his complained-of bowel obstruction] as part of their cost cutting and personal bonus increasing scheme."  Id. at ECF p. 47-48.  Plaintiff also asserts that "similarly situated white inmates (those

with hypertension and kidney disease) are provided better, prompt and adequate care, and

prompt access to out-of-prison health care providers."  Dkt. No. 45 at ECF p. 47.  He contends

that "defendants were motivated by his race in denying him access to treatment" and alleges that

> it is well-known amongst the African-American senior citizen
> inmates at SCI-Graterford serving life sentences with chronic
> diseases and illnesses that there is a custom, policy and practice
> amongst Defendants, Commonwealth PA_DOC, CORIZON f/k/a
> PHS, Drs. Kosierowski, Stefanic, Blatt, McDonald, Zaro, P.A.
> Machak, P.A.-C. Masino and the "Does" of failing to provide
> prompt and adequate treatment for their chronic diseases and
> illnesses in order to hasten their death, in other words, to bring
> about a premature end to their life sentence.

Id. at ECF p. 46-47.

## STANDARD OF REVIEW

To survive defendants' motions to dismiss pursuant to Rule 12(b)(6), plaintiff's second

amended "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In evaluating defendants' motion, the Court

must separate the legal and factual elements of plaintiff's claims, accept the well-pleaded factual

allegations as true and disregard any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009).  The Court "must then determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 211,

quoting Iqbal, 556 U.S. at 679.  A claim is facially plausible when the facts pled "allow[ ] the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' –

'that the pleader is entitled to relief.'"  Id. at 679, quoting Fed. R. Civ. P. 8(a)(2).

**DISCUSSION**

Plaintiff's claims against the medical defendants must be dismissed for many of the same reasons that dismissal was warranted with respect his claims against the DOC defendants.

**I.      Statute of Limitations**

Plaintiff's claims in this action are subject to a two year statute of limitations.  See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (determining that the statute of limitations for a § 1983 claim is properly governed by Pennsylvania's statute of limitations for personal injury claims); 42 Pa. Cons. Stat. § 5524 (providing a two year statute of limitations for a personal injury claim).  Just as it did with respect to the DOC defendants, the statute of limitations bars plaintiff's claims against the medical defendants arising out of the alleged injury to his arm from a Hepatitis B vaccine that he received on March 29, 2003.  See Robinson v. Prison Health Services, Inc., No. 10-7165, 2014 WL 2452132, at *3-5 (E.D. Pa. June 2, 2014).

Plaintiff's argues that his lawsuit "was timely based upon tolling and relating back,"[7] Dkt. No. 72 at ECF p. 17.   However, plaintiff's argument is not supported by the allegations in the operative complaint.  "Under federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon

---

[7]      As I explained in my prior opinion in this action,

The relation back doctrine applies [to preserve a claim] when an amendment to a complaint occurs after the statute of limitations has run for a cause of action if the claim asserted by amendment arose out of the same conduct, transaction or occurrence as that contained in the original pleading or, when the amendment names a party who had notice that, but for a mistake, it was properly a party to the claim.

Robinson, 2014 WL 2452132, at *3, citing Fed. R. Civ. P. 15(c).  It remains "unclear how Robinson seeks to use this doctrine to overcome the expired statute of limitations in this case because, with respect to his claims arising out of the injection, Robinson's original complaint was not timely."  Id.

-6-

which the action is based.'" <u>Kach</u>, 589 F.3d at 634, <u>quoting</u> <u>Sameric Corp. v. City of Phila.</u>, 142 F.3d 582, 599 (3d Cir. 1998).  Plaintiff alleges that he "developed severe pain and swelling in the area of the injection" shortly after it was given on or about March 29, 2003 and that "[f]rom March 29, 2003 until today, Mr. Robinson has made hundreds of requests for prompt and adequate medical treatment to his arm."  Dkt. No. 45 at ECF p. 53-54.  In response to defendants' motion, plaintiff argues that "the undisputed fact is the facts underlying this medical problem were first brought to PA DOC's attention in Inmate Grievance Number 56095 on June 17, 2003 and July 7, 2003."  Dkt. No. 72 at ECF p. 10, 13.  In support of his argument, he cites a June 26, 2010 inmate grievance No. 323850 in which he explained, "I've had damage to my right arm by SCIG Nurse while being given a hepatitis B Vaccine injection.  I have been suffering since 3-29-03, with this problem."  <u>Id.</u> at ECF p. 17.  Plaintiff's allegations clearly demonstrate that he knew of the alleged injury to his arm "shortly after" March 29, 2003.

Plaintiff argues that the statute of limitations was tolled while he exhausted his administrative remedies.  For tolling to apply, however, "a prisoner must <u>properly</u> exhaust his administrative remedies.  'Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .'" [8] <u>Austin v. Beard</u>, 351 F. App'x 780, 782 (3d Cir.

---

[8]     In Pennsylvania state correctional institutions, inmates must follow a three-step grievance procedure prior to bringing suit in federal court.  <u>See</u> <u>Johnson v. Townsend</u>, 314 F. App'x 436, 441 (3d. Cir. 2008).  The procedure is outlined in Pennsylvania Department of Corrections Administrative Directive 804 (DC-ADM 804).

> The first step in the inmate grievance process is the initial review.  Grievances must be filed within 15 working days of the event on which the grievance is based. . . . An inmate who is dissatisfied with the initial review decision is permitted to appeal to the Superintendent. . . . Prior to December 8, 2010, appeals were to be filed within 10 working days, however, pursuant to an amendment to Department policy, this time period was extended in December 2010 to 15 working days. . . . An appeal to final review may be

2009), quoting Woodford v. Ngo, 548 U.S. 81, 93 (2001=6) (emphasis in original).  As I explained in my opinion dismissing plaintiff's claim against the DOC defendants, "Robinson has not sufficiently alleged that he properly pursued an administrative remedy for his alleged arm injection."  Robinson, 2014 WL 2452132, at *4.  Plaintiff alleges generally that "[f]rom March 29, 2003 until today [he] has made hundreds of requests for prompt and adequate medical treatment for the injury to his arm."  Dkt. No. 45 at ECF p. 54.  But he only specifically cites a grievance he filed on June 26, 2010, more than 7 years after the alleged injection, not within the 15 days required under Pennsylvania Department of Corrections Administrative Directive 804 (DC-ADM 804).  Plaintiff has not sufficiently alleged that the exhaustion of his administrative remedies should operate to toll the statute of limitations in this case.

Plaintiff also argues that according to his "undisputed and plausible pleadings, he properly and time[l]y filed an administrative grievance based upon a continuous injury."  Id. However, plaintiff's characterization of his arm injury as "an ongoing serious medical condition," id. at ECF p. 55, is not enough to toll the statute of limitations.  Under the continuing violation doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (internal quotation and citation omitted).

> To determine whether a practice was continual, [I must] consider (1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently . . . .  "A plaintiff

---

> sought through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal to that office within 15 working days of the date of the Superintendent's decision.

Overly v. Garman, No. 12-0832, 2014 WL 356578, at *4 (M.D. Pa. Jan. 31, 2014) aff'd, 599 F. App'x 42 (3d Cir. 2015).

must also point to an affirmative act that took place within the
limitations period for the continuing violations doctrine to apply."

Cibula v. Fox, 570 F. App'x 129, 135-36 (3d Cir. 2014) (citations omitted). "[C]ontinual ill

effects from an original violation" – unlike "continual unlawful acts" – cannot serve as the basis

of a continuing violation.  Cowell, 263 F.3d at 293.  Plaintiff's alleged arm injury is the result of

a single incident which took place in 2003, long before plaintiff raised his claim in this action, it

is not a continuing violation and is thus time-barred.

I will dismiss plaintiff's claim regarding the alleged injury to his arm with prejudice

because amendment would be futile.  See Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004)

("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay,

prejudice, or futility.").

## II.      Exhaustion

Defendants argue that plaintiff's federal claims relating to his kidney should be dismissed

pursuant to the doctrine of exhaustion.  Dkt. No. 61 at ECF p. 25.  "While the failure to exhaust

administrative remedies may form a basis for a dismissal for failure to state a claim, dismissal on

that ground is appropriate only in those circumstances where the complaint reveals the

exhaustion defense on its face."  Thomas v. Brinich, 579 F. App'x 60, 62 (3d Cir. 2014), citing

Jones v. Bock, 549 U.S. 199, 215-16 (2007).  "[I]t is considerably easier for a prison

administrator to show a failure to exhaust than it is for a prisoner to demonstrate exhaustion."

Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Thus, "failure to exhaust is an affirmative

defense to be pleaded by the defendant."  Id.

The operative complaint does not, on its face, reveal an exhaustion defense that would

support a 12(b)(6) dismissal, but rather alleges that plaintiff filed grievances regarding to his

kidney condition.  Dkt. No. 45 at ECF p. 51-52.  Defendants argue that "based on the allegations

in the amended complaint Robinson concedes his failure to exhaust his claims based on lack of

proper care for his kidney and the failure to diagnose his cancer" because he "admits that another

inmate filed a grievance on his behalf" and "that grievance shows that it failed to mention any of

the individual defendants or Corizon."  Dkt. No. 61 at ECF p. 26.  Although plaintiff's allegation

that he relied on a "power of attorney" to file a grievance on his behalf, Dkt. No. 45 at ECF p 51,

raises questions about whether plaintiff has effectively exhausted his administrative remedies, I

find that the question of whether plaintiff has sufficiently exhausted his claims is more

appropriately resolved on summary judgment.  I therefore decline to find that plaintiff's failure

to exhaust his administrative remedies warrants dismissal of his federal claims relating to his

kidneys against defendants.

### III.    Section 1983 Claim Against Corizon:  <u>Monell</u> Liability

Defendants argue that plaintiff's <u>Monell</u> claim against Corizon, Dkt. No. 45 at ECF p. 64,

should be dismissed because plaintiff has not sufficiently alleged that any of the alleged

violations of his rights stemmed from a policy or custom of Corizon.  Dkt. No. 61 at ECF p. 45.

"Under <u>Monell v. Dep[artmen]t of Social Services</u>, 436 U.S. 658 (1978), a city, municipality, or

private entity that is a state actor 'may not be held vicariously liable under § 1983 for the actions

of its agents' because '[t]here is no respondeat superior theory of municipal liability.'"  <u>Regan v.

Upper Darby Tp.</u>, 363 F. App'x 917, 922 (3d Cir. 2010), <u>quoting</u> <u>Sanford v. Stiles</u>, 456 F.3d 298,

314 (3d Cir. 2006); <u>see also</u> <u>Neuen v. PrimeCare Med., Inc.</u>, No. 09-509, 2011 WL 1104118, at

*8 (E. D. Pa. Mar. 24, 2011) ("Private entities that contract with municipalities to provide

services to prison inmates, as well as employees of those entities, are acting 'under color of state

law.'").  In order to establish a viable § 1983 claim against a private entity such as Corizon,

plaintiff must allege that the entity had a policy, practice, or custom which caused the

constitutional violation he claims.  See Adonai-Adoni v. King, 07-3689, 2009 WL 890683 * 2 (E.D. Pa. March 31, 2009) (holding that a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom).  "To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, PA, 564 F.3d 636, 658-59 (3d Cir. 2009).  A "[p]olicy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."  Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

In the operative complaint, plaintiff asserts that Corizon has a "custom, policy and practice . . . of failing to provide prompt and adequate treatment" to "African-American senior citizen inmates at SCI-Graterford serving life sentences with chronic diseases and illnesses . . . in order to hasten their death, in other words, to bring about a premature end to their life sentence." Dkt. No. 45 at ECF p. 44.  Plaintiff also alleges that defendants "receive financial bonuses for not sending inmates, such as Mr. Robinson to outside-of-prison medical centers and doctors . . . ."  Id.  In his response to defendants' motion, plaintiff argues that he has "ple[d] that for years CORIZON has demonstrated a policy or custom of denying inmates adequate medical treatment virtually everywhere it has been employed to provide prison health care" and cites a portion of the operative complaint in which he details numerous allegations against Corizon gathered from newspaper articles related to Corizon's operations at other prison facilities.  See, e.g., Dkt. No. 45 at ECF p, 15-23.

Moving Defendants argue that

-11-

> [n]o indication exists from the amended complaint that Corizon had a policy requiring the impermissible consideration of cost in providing treatment to Robinson. The amended complaint never indicates the nature of the policy. What had to be done to get the bonus? It only states the policy in conclusory terms. It offers no factual averments to support the policy. What was the size of the bonus? How was it determined?

Dkt. No. 61 at ECF p. 48. They argue that the operative complaint instead "contains many factual averments which have nothing to do with the proposed causes of action set forth by Robinson," specifically, "a laundry list of alleged constitutional violations and acts of medical malpractice at locations other than the State Correctional Institution at Graterford."[9] Dkt. No. 61 at ECF p. 17-18; see, e.g. Dkt. No. 45 at ECF p. 13-29, 34-35. Plaintiff responds that "contrary to the moving Defendants' gripes, these averments are relevant because they help inform this Court . . . of the corporate Defendants . . . and their medical employees' systemic and deliberate indifference." Dkt. No. 72 at ECF p. 22.

I find that plaintiff's allegations regarding any unconstitutional policy are too conclusory to withstand defendants' motion. Plaintiff alleges no facts to suggest that any Corizon decisionmaker was aware of, let alone implemented, the policies which plaintiff claims. Nor do his allegations support, indirectly, such an inference. He "provides no factual details regarding the existence, scope or application of the policies, practices, procedures or customs that he claims give rise to his claims." Wagner v. Cnty. of Montgomery, No. 10-2513, 2014 WL 4384493, at *7 (E.D. Pa. Sept. 4, 2014). "[S]imply paraphras[ing] § 1983" fails to satisfy the "rigorous standards of culpability and causation" required to state a claim for liability under

---

[9]    When allegations found in a pleading are so unrelated to the plaintiff's claims as to be "unworthy of any consideration," a motion to strike pursuant to Rule 12(f) may be appropriate. Johnson v. Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004); see also Fed. R. Civ. P. 12(f) (providing that "redundant, immaterial, impertinent or scandalous" material may be stricken from a pleading). Defendants, however, have not moved to strike the allegations to which they refer.

Monell.  McTernan, 564 F.3d at 658-59.  Plaintiff has not alleged sufficient factual averments "to allow[ ] the court to draw the reasonable inference that [Corizon]" has the customs or policies which he claims.  Iqbal, 556 U.S. at 678; see also Abraham v. Digugleilmo, No. CIV.A. 06-0058, 2010 WL 2136600, at *5 (E.D. Pa. May 25, 2010) ("Specific details of the allegedly injurious policies are not necessary at this stage, but more is required than the bald statement that an injurious policy exists.").  Accordingly, I will dismiss plaintiff's Section 1983 claim against Corizon to the extent that plaintiff is able to plead facts with sufficient particularity regarding Corizon's allegedly unconstitutional policies or customs.

## IV.    Deliberate Indifference

Denial of medical care violates the Eighth Amendment[10] where a prison official is deliberately indifferent to a prisoner's serious medical need.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Defendants argue that plaintiff's federal claims with respect to his kidneys should be dismissed because he has not set forth sufficient facts to state a claim against Machak, Blatt, Kosierowski, McDonald, Stefanic, Zaro or the Does for deliberate indifference to his serious medical needs.  See Dkt. No. 61 at ECF p. 32.  Deliberate indifference can occur where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "prevents a prisoner from receiving needed or recommended medical treatment."  Rouse, 182 F.3d at 197.  "Allegations of participation or actual knowledge and acquiescence . . .  must be made with appropriate particularity."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).  Also, neither "mere allegations of malpractice"

---

[10]      To successfully state a claim against any of the defendants for a violation of his constitutional rights pursuant to 42 U.S.C. § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and, (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States.  See Rehberg v. Paulk, ─── U.S. ────, ────, 132 S. Ct. 1497, 1501, 182 L.Ed.2d 593 (2012).

nor a prisoner's disagreement with prison medical professionals as to the proper method of treatment are sufficient to state a claim for an Eighth Amendment violation.  See Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).  Prison medical authorities are "afford[ed] considerable latitude . . . in the diagnosis and treatment of the medical problems of inmate patients . . . and negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution." Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

I find that the allegations in the operative complaint are not sufficient to show that moving defendants were deliberately indifferent to his serious medical need – in other words, that they either participated in the denial of adequate medical care or had knowledge that plaintiff was receiving inadequate medical care and declined to remedy the situation.  Plaintiff asserts that these defendants "knew or could have known through reasonable medical testing and examinations that Mr. Robinson had or would develop kidney cancer . . ." and that they "[k]new that Mr. Robinson had developed kidney cancer . . . ."  Dkt. No. 45 at ECF p. 42.  But he alleges no facts to support an inference that defendants had the knowledge which he alleges they did. Instead, plaintiff alleges that  "for more than 11 years, Defendants Drs. Kosierowski, Stefanic, Blatt, McDonald, Zaro, P.A.[,] Machak, P.A.-C[,] Masino and the "Does" had neglected to conduct proper medical examinations and testing of Mr. Robinson and/or had failed to properly inform him of the true severity and extent of his serious medical conditions."  Dkt. No. 45 at ECF p. 45.  Plaintiff also makes the contradictory allegation that these defendants "examined Mr. Robinson numerous times from 2000 until 2011 for the purpose of monitoring high blood pressure and kidneys."  Dkt. No. 45 at ECF p. 42.  Taking this allegation as true, plaintiff was not denied medical care.  And there are no facts alleged to support an inference that anything

defendants may have learned from their alleged numerous examinations should have led them to know that plaintiff had kidney cancer.  Plaintiff alleges that defendants "<u>could</u> have performed several types of radiographic tests to determine the . . . source and scope of Mr. Robinson's problem," Dkt. No. 45 at ECF p. 47-48, but "a medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976).

The operative complaint also lacks factual allegations to support plaintiff's claim that defendants "refused to refer him to outside-of-prison medical centers and doctors . . . for prompt and adequate testing and treatment" . . . "because they receive financial bonuses for not sending inmates . . . to outside-of-prison medical centers and doctors . . . ."  Dkt. No. 45 at ECF p. 43-44; <u>cf.</u> <u>Winslow v. Prison Health Servs</u>., 406 F. App'x 671, 674 (3d Cir. 2011) (affirming dismissal of the plaintiff's complaint where he did not allege "what basis he has for thinking that "policies to save money" affected his medical treatment").  Even if it did, the "deliberate indifference standard of <u>Estelle</u> does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." <u>Reynolds v. Wagner</u>, 128 F.3d 166, 175 (3d Cir. 1997).

While plaintiff may disagree with the treatment provided by the medical defendants, his allegations regarding their treatment of him are not sufficient to plausibly plead deliberate indifference. I will therefore dismiss plaintiff's constitutional claim with respect to the treatment he received for his kidneys with leave to amend to the extent that he is able to plead sufficient facts to show that defendants were deliberately indifferent to his serious medical need.

## V.    Equal Protection

To the extent that the operative complaint can be construed as attempting to assert a

claim for denial of his right to equal protection pursuant to the Fourteenth Amendment, it fails to state a claim.[11]  Plaintiff asserts that defendants' "habitual failures and their participation in cost saving and bonus driven schemes . . . has caused injuries to Mr. Robinson and thousands of other inmates at SCI-Graterford and throughout PA-DOC . . . " by denying them "the level of medical treatment that they are constitutionally entitled to under the . . . Fourteenth Amendment[ ] to the United States Constitution."  Dkt. No. 45 at ECF p. 63.  "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiff[ ] must prove the existence of purposeful discrimination. [He] must demonstrate that [he] received different treatment from that received by other individuals similarly situated."  Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009), quoting Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).  A plaintiff's failure to "allege any facts showing that he was treated differently than any similarly situated individuals" is fatal to his equal protection claim.  Slavoski v. Pawlowski, 462 F. App'x. 215, 218 (3d Cir. 2012).

Plaintiff alleges that "similarly situated white inmates (those with hypertension and kidney disease) are provided better, prompt and adequate care, and prompt access to out-of-prison health care providers."  Dkt. No. 45 at ECF p. 47.  He also alleges that "it is well-known amongst the African-American senior citizen inmates at SCI-Graterford serving life sentences with chronic diseases and illnesses that there is a custom, policy and practice amongst Defendants, . . . of failing to provide prompt and adequate treatment for their chronic diseases and illnesses . . . ."  Id. at ECF p. 44.  Plaintiff alleges no facts to make plausible his claim that

---

[11]      In his response to defendants' motion, plaintiff argues that his "racial discrimination pleadings" are "sufficient for the purposes of section 1981, 1983, 1985(3) and the Thirteenth Amendment to the United States Constitution.  Dkt. No. 72 at ECF p. 44.  However, plaintiff does not plead these causes of action in his operative complaint.  Even if he had, plaintiff's conclusory allegations are not sufficient to support a claim that defendants' actions were the result of any intent to discriminate on the basis of plaintiff's race.

any similarly situated white inmate actually exists or that such individuals in fact received better access to medical care than did he.  His conclusory allegations are insufficient to permit the Court to infer that any denial of access to medical care which plaintiff claims was due to a denial of equal protection.  I will dismiss his equal protection claim with leave to amend.

## VI.    Breach of Contract

Plaintiff asserts a claim against Corizon for breach of contract.  He claims that he made a co-payment for the provision of medical services and alleges that he "was a direct party or a third party beneficiary to the contracts between Defendants, Commonwealth, PA-DOC and CORIZON f/k/a PHS."  Dkt. No. 45 at ECF p. 67.  Plaintiff does not allege facts sufficient to permit the Court to infer that he was a direct party to any contract.  Further, his allegations are insufficient to support a claim that he has a cause of action as a third-party beneficiary.[12]

In Pennsylvania, "[i]n order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself."  Burks v. Federal Ins. Co., 883 A.2d 1086, 1087-88 (Pa. Super. Ct. 2005), quoting Scarpitti v. Weborg,

---

[12]       Indeed, defendants attach as an exhibit to their motion a document they contend is an excerpt from a contract that the DOC entered into with Corizon whereby Corizon agreed to provide medical care to inmates at certain prisons.  Pursuant to Article 25 of that agreement, the parties agreed that they understood "that this AGREEMENT does not create or Intend to confer any rights in or on persons or entities not a party to this AGREEMENT."  Dkt. No. 61-1 (emphasis added).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  Pension Ben. Guar. Corp v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal quotations omitted).  The contract underlying plaintiff's breach of contract claim is, of course, integral to his complaint.  However, because defendants have attached to their motion only an excerpt from what they claim to be the relevant contract, I decline to rely on defendants' exhibit in reaching my decision that plaintiff fails to state a claim for breach of contract.

609 A.2d 147, 149 (Pa. 1992).  Alternatively,

> the circumstances must be so compelling that recognition of the
> beneficiary's right is appropriate to effectuate the intention of the
> parties. . . . [and] . . . (1) the performance satisfies an obligation of
> the promise to pay money to the beneficiary or (2) the
> circumstances indicate that the promisee intends to give the
> beneficiary the benefit of the promised performance.

Perlman v. Universal Restoration Sys., Inc., No. 09-4215, 2013 WL 5278211, at *8 n.11 (E.D.

Pa. Sept. 19, 2013) (citations omitted).  The standing requirement "leaves discretion with the trial

court to determine if recognition of third party beneficiary status would be 'appropriate.'"  Guy

v. Liederbach, 459 A.2d 744, 751 (Pa. 1983)

In his response to defendants' motion, plaintiff argues that "there is no doubt that Mr.

Robinson, a PA DOC inmate, was a third party beneficiary to the contract between Defendants to

provide medical services to inmates . . . ."  Dkt. No. 72 at ECF p. 39.  However, other courts in

this Circuit have found that plaintiffs lack standing to sue for the type of violation plaintiff here

claims; "this is so even if Plaintiff deems or designates himself as a third-party beneficiary of

[the] contract."  Parker v. Gateway Nu-Way Found., No. 10-2070, 2010 WL 4366144, at *4

(D.N.J. Oct. 26, 2010), see also Maqbool v. University Hosp. of Medicine & Dentistry of N.J.,

11-4592, 2012 WL 2374689, at *4 (D.N.J. June 13, 2012) (same); Green v. Corzine, No. 09-

1600, 2011 WL 735745, at *4 (D.N.J. Feb.22, 2011) (same); cf. Clifton v. Suburban Cable TV

Co., 642 A.2d 512, 513 (Pa. Super. Ct. 1994) (holding prison inmate lacked standing to sue cable

company regarding rate increase as third-party beneficiary of contract between prison and

company to provide cable television to inmates).  Plaintiff has not sufficiently alleged that there

was an express contractual intent to make him a third party beneficiary of the relevant contract.

Nor does plaintiff's citation to Leaphart v. Prison Health Services, Inc., No. 10-1019, 2010 WL

5391315, at *11 (M.D. Pa., Nov. 22, 2010), support a finding that he has sufficiently alleged

compelling circumstances to warrant a finding that he has third party beneficiary standing.  See Dkt. No. 72 at ECF p. 39.  In Leaphart, the Court explained that inmates "typically do not have the right to choose their outside consulting physician," in deciding that "the relationship between the prisoner, the state and the doctor was sufficiently intertwined to justify" a finding that a private doctor was a state actor for purposes of plaintiff's section 1983 claim.  2010 WL 5391315, at *11.  Ultimately, plaintiff's conclusory allegation that he was "a third party beneficiary" is not enough to support his claim.  Thus I will dismiss plaintiff's breach of contract claim.[13]

## VII.   Negligence

### A.   Medical Malpractice

Defendants argue that plaintiff's operative complaint fails to sufficiently plead a cause of action  for medical malpractice.  Dkt. No. 61 at ECF p. 55.  To make out a claim for medical malpractice under Pennsylvania law, a plaintiff must show that: (1) the medical professional owed the patient a duty of care; (2) the medical professional breached the duty; (3) the breach caused the harm suffered; and (4) the damages alleged were a direct result of the harm.  See Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003).

Plaintiff alleges that "Drs. Kosierowski, Stefanic, Blatt, McDonald, Zaro, P.A.s Machak and Masino prescribed Mr. Robinson a cocktail of medicines that may have do[o]med him from the outset."  Dkt. No. 45 at ECF p. 39.  He asserts that in 2005 and 2006 they "examined Mr. Robinson numerous times (at least twice each year) for the purpose of monitoring his high blood pressure and kidneys to determine how Mr. Robinson was responding to the cocktail of

---

[13]      Dismissal of plaintiff's claim for breach of contract will be with prejudice because amendment would be futile.  See Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

medicines that they had prescribed" Id. at ECF p. 40.  Plaintiff alleges that through these

examinations and their access to "test results and raw data" the medical defendants "knew or

could have known . . . that Mr. Robinson had or would develop kidney cancer . . . " and "refused

to take any measures to refer Mr. Robinson to a kidney specialist, kidney cancer specialist or

other oncologist." Id. at ECF p. 42.  He claims that the medical defendants "refused to take this

basic step of preventive medicine because they receive financial bonuses for not sending

inmates, such as Mr. Robinson to outside-of-prison medical centers and doctors . . . ." Id. at ECF

p. 44.

     Although defendants do not raise the argument, plaintiff's medical malpractice claims

against the individual medical defendants must be dismissed because plaintiff has not filed the

certificates of merit which would be required to support his claims under Pennsylvania law.

"Federal courts in Pennsylvania have uniformly held that the [certificate of merit] requirement is

a substantive rule of law that applies in professional liability actions proceeding in federal court."

Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008), citing Iwanejko v.

Cohen & Grigsby, P.C., 06-4471, 249 F. App'x 938, 943-44 (3d Cir. 2007); see also Booker v.

U.S., 366 F. App'x 425, 426 (3d Cir. 2010) (explaining that the COM rule "is [a] substantive

state law that must be applied" in federal district court).  Rule 1042.3 of the Pennsylvania Rules

of Civil Procedure requires that "[i]n any action based upon an allegation that a licensed

professional deviated from an acceptable professional standard," the plaintiff must file a

certificate of merit – a written statement by an appropriate licensed professional, an expert with

sufficient education, demonstrating a reasonable probability of the defendant's deviation from

acceptable professional standard – within sixty days after the filing of the complaint.  Pa. R. Civ.

P. 1042.3(a).  "There is a very narrow exception to the requirement of expert testimony where

the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension of even non-professional persons." Toogood, 824 A.2d at 1145 (quotation and citation omitted).  Plaintiff's claims are not so simple as to fall within the narrow exception to the requirement of expert testimony.  Accordingly, I will dismiss his claims against the individual medical defendants for failure to submit the required certificates of merit.

Plaintiff also asserts a claim against Corizon, arguing that "agents, servants, and/or employees of Defendant CORIZON f/k/a PHS . . . were acting within the scope and course of their employment, and under the direct control and supervision of Defendant CORIZON f/k/a PHS and its policy and decision makers [sic]," when they breached their "duty to comply with generally accepted standards of care in their medical evaluations and treatment of Plaintiff . . . ." Dkt. No. 45 at ECF p. 69-70.  He alleges that Corizon is thus liable to Plaintiff on the basis of respondeat superior liability.  Id.

Where a plaintiff seeks to recover based on a theory of respondeat superior liability, certificates must be filed as to each professional defendant for whose behavior a corporate defendant allegedly bears vicarious liability.  See Rostock v. Anzalone, 904 A.2d 943, 946 (Pa. Super. Ct. 2006); Stroud, 546 F. Supp. 2d at 248.  Accordingly, dismissal of plaintiff's medical malpractice claim is also warranted against Corizon for plaintiff's failure to submit the required certificates of merit.[14]

**B.    Corporate Negligence**

In his response to defendants' motion, plaintiff also argues that he has plausibly pled a claim against Corizon for corporate negligence.  Dkt. No. 72 at ECF p. 31.  "A corporation, like Corizon, which provides the exclusive and comprehensive medical services to prison inmates

---

[14]    Absent the required certificates of merit, amendment would be futile. Accordingly, I will dismiss plaintiff's medical malpractice claim with prejudice.

may be held liable under a theory of corporate negligence."  Davis v. Corizon Health, Inc., No. 14-1490, 2015 WL 518263, at *4 (E.D. Pa. Feb. 9, 2015), citing Fox v. Horn, 98-5279, 2000 WL 49374, at *8 (E.D. Pa. Jan.21, 2000) (predicting that the Pennsylvania Supreme Court would extend the doctrine of corporate negligence to state prison healthcare providers).  To plead a prima facie case of corporate negligence, plaintiff must allege sufficient facts to "show 1.) Corizon's actions deviated from an accepted medical standard; 2.) Corizon had actual or constructive knowledge of the defect or procedures that created the harm; and 3.) Corizon's negligence was a substantial factor in causing the harm."  Davis, 2015 WL 518263, at *4 (citation omitted), citing Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997).

But Corizon "cannot be held liable for the negligent acts of its agents under a theory of corporate negligence."  Davis v. Corizon Health, Inc., No. 14-1490, 2015 WL 518263, at *4 (E.D. Pa. Feb. 9, 2015).  Instead, "[t]he cause of action arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees." Moser v. Heistand, 681 A.2d 1322, 1326 (Pa. 1996); see also Stroud v. Abington Mem'l Hosp., 546 F. Supp. 2d 238, 245 (E.D. Pa. 2008) ("corporate negligence is a direct theory of liability against the hospital, which contemplates some form of systemic negligence by the hospital, and is not simply a vicarious theory of liability based on the negligence of its employees").

Plaintiff's allegation that Corizon is liable to Plaintiff on the basis of respondeat superior liability is clearly insufficient to support a claim for corporate negligence.  Cf. Davis, 2015 WL 518263, at *4 (explaining that "Plaintiff's counsel clearly does not understand the distinction between vicarious liability and corporate liability").  Nor is plaintiff's insufficient allegation of a "policy. . . of failing to provide prompt and adequate treatment" to "African-American senior citizen inmates at SCI-Graterford serving life sentences with chronic diseases and illnesses . . . ,"

Dkt. No. 45 at ECF p. 44, enough to plead a basis for the imposition of liability for corporate negligence on Corizon.  To the extent that plaintiff endeavors to raise a corporate negligence claim against Corizon, it will be dismissed with leave to amend to the extent that he is able to allege sufficient facts to plead that Corizon was negligent as a result of its own policies, actions or inaction.

## IX.    Intentional Infliction of Emotional Distress[15]

Defendants seek to dismiss plaintiff's claim for intentional infliction of emotional distress.  The claim "requires a showing that the defendants acted in a manner 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and intolerable in a civilized society.'"  McGreevey v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005), quoting Restatement (Second) of Torts § 46.  Plaintiff must also show that defendants' conduct was intentional or reckless and that it caused severe emotional distress.  See Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997).

Plaintiff alleges that "[a]ll defendants' conduct was grossly reckless and beyond the bounds of conduct tolerated in a civilized society, even in a prison environment because Plaintiff was a Prisoner."  Dkt. No. 45 at ECF p. 72.  He asserts that he "has suffered and continues to suffer great pain and suffering, emotional distress, [and] mental anguish . . . ."  Id.  These conclusory allegations are insufficient to state a claim for intentional infliction of emotional distress.  The other allegations in plaintiff's operative complaint, which he incorporates by reference into his claim, id., are likewise insufficient to show the type of intentional conduct necessary to sustain an IIED claim.  I will dismiss the claim with leave to amend.

---

[15]     Although plaintiff's response to defendants' motion to dismiss argues that he has also plausibly plead a claim for negligent infliction of emotional distress, Dkt. No. 72 at ECF p. 53, no such claim is set forth in the operative complaint.  See Dkt. No. 45.

**X.      Conspiracy**

Finally, defendants move to dismiss plaintiff's claim for "conspiracy under the color of state law to violate plaintiff's constitutional, civil and other state and federal rights."  Dkt. No. 45 at ECF p. 72.  Plaintiff was granted "leave to amend his conspiracy claim, but only to the extent that he can allege specific facts, particular to the moving defendants, demonstrating the actions of defendants committed in creating and furthering the conspiracy, including the times and places of meetings and the general role of each conspirator."  Robinson v. Prison Health Servs., Inc., No. 10-7165, 2014 WL 2452132, at *7 (E.D. Pa. June 2, 2014) (quotation omitted).  I explained that

> [m]erely asserting that "all [d]efendants expressly or tacitly agreed to act and did expressly or tacitly act under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly, grossly negligent (sic) and with deliberate indifference, in concert and conspiracy with each other and others to violate [p]laintiff's constitutional, civil and other rights" is insufficient to satisfy the pleading requirements.

Id.  Now, in the operative complaint, plaintiff alleges that

> "[d]efendants expressly or tacitly agreed to act and did expressly or tacitly act under the color of state law, knowingly, intentionally, willfully, maliciously, wantonly grossly negligent [(sic)], recklessly and with deliberate indifference, in concert and conspiracy with eachother and others to violate plaintiff's constitutional, civil and other rights . . . .

Dkt. No. 45 at ECF p. 73.  Although plaintiff cites numerous paragraphs of his operative complaint in his response to defendants' motion, see Dkt. No. 72 at ECF p. 46-53, I find that he again fails to make sufficient allegations regarding the times and places of meetings and the general role of each conspirator to demonstrate an actual agreement to conspire.  While I am "mindful . . . that the existence of a conspiracy must usually be inferred from the circumstances . . . the rule is clear that allegations of a conspiracy must provide some factual basis to support

the existence of the elements of a conspiracy:  agreement and concerted action."  <u>Capogrosso v. The Sup.Ct. of N.J.</u>, 588 F.3d 180, 184–85 (3d Cir. 2009), <u>citing</u> <u>Crabtree By & Through Crabtree v. Muchmore</u>, 904 F.2d 1475, 1481 (10th Cir. 1990).  Plaintiff's conspiracy claim remains conclusory and lacks sufficient factual averments to plausibly allege the requisite agreement or concerted action between any of the defendants.  I will dismiss his claim with leave to amend.

An appropriate Order follows.[16]

---

[16]    "[T]he meandering nature of Plaintiff's [operative] complaint, its overlapping and confusing discussions of Defendants and issues, and the inclusion of unrelated issues and digressions has made it extremely difficult to construe . . . .  Going forward, the Court directs Plaintiff to adhere to the mandate of Rule 8 and provide "a short and plain" statement of his claim or claims" in any amended complaint which he might file.  <u>Desposito v. New Jersey</u>, No. 14-1641, 2015 WL 2131073, at *5 (D.N.J. May 5, 2015).