IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DAVID ROBINSON,                          :
                                         :          CIVIL ACTION
        v.                               :
                                         :          NO.  12-1271
CORIZON HEALTH, INC. f/k/a PHS           :
CORRECTIONAL HEALTHCARE, INC.,           :
et al.                                   :


O'NEILL, J.                                                    December 13, 2016

## MEMORANDUM

Plaintiff David Robinson, an inmate at the State Correctional Institution at Graterford, brings this action against the corporate provider of prison healthcare services, several prison doctors and the Commonwealth of Pennsylvania.  He sets forth violations of his constitutional rights under the First, Eighth and Fourteenth Amendments, together with several state law claims, in connection with the defendants' failure to diagnose and treat his now advanced-stage kidney cancer.  Defendants Corizon f/k/a Correctional Health Care, Inc., Bruce Blatt, M.D., Margarita McDonald, M.D., Richard Kosierowski, D.O., John Does, Jane Does, John Zaro, M.D. and Raymond Machak, P.A. (collectively, moving defendants) have filed the present motion to dismiss plaintiff's second amended complaint.  For the following reasons, I will dismiss the Count I § 1983 claim against Corizon and the Count VI conspiracy claims under 42 U.S.C. §§ 1985 and 1986, but deny the motion in all other respects.

## FACTUAL BACKGROUND

According to the facts set forth in the second amended complaint,[1] in 2000, PHS Correctional Healthcare, Inc. (PHS) served as the provider of healthcare throughout the Pennsylvania Department of Corrections.  Sec. Am. Compl., ECF No. 64, ¶ 17.  As a result of the merger between PHS and Correctional Medical Services, defendant Corizon Health, Inc. became the newly formed company.  Id. ¶ 18.  Corizon bore direct responsibility for recruiting and hiring its employees at the State Correctional Institution at Graterford, including defendants Dr. Blatt, Dr. McDonald, Dr. Kosierowski, Dr. Stefanic, Dr. Zaro, Machak, P.A., Masino, P.A. and the Does (collectively, the medical defendants).  Id. ¶ 19.  Since 1991, the companies that make up Corizon have been sued more than 6,000 times for corporate negligence, medical malpractice and deliberate indifference in the provision of health care services to prisoners and pretrial detainees.  Id. ¶ 22.  Many of the inmate grievances that have been filed against the moving defendants have been routinely dismissed by the Commonwealth of Pennsylvania and the Pennsylvania Department of Corrections.  Id. ¶ 21.  In response to these lawsuits, Corizon has taken no responsibility for its corporate culture.  Id. ¶ 23.

In 2000, Corizon contracted with the Commonwealth to provide medical services to all inmates, including plaintiff, through the Pennsylvania Department of Corrections.  Id. ¶ 25. From that time, until Corizon's termination, Corizon was allegedly made aware that the medical defendants took cost-saving and bonus-driven actions that have caused injuries to plaintiff and

---

[1]     When determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).  In accordance with this principle, my recitation of the facts assumes the truth of the factual statements in the second amended complaint.

other inmates at SCI-Graterford.  Id. ¶ 27.  Yet, Corizon encouraged these actions and implemented policies to improve its profitability.  Id.

Plaintiff David Robinson is an inmate at SCI-Graterford and was supposed to receive medical treatment through Chronic Care Clinics (CCC) run by Corizon at Graterford.  Id. ¶¶ 31, 34.  At all relevant times, Corizon employed the medical defendants to provide medical services and treatment to plaintiff.  Id. ¶ 35.  Since 1994, prison health care administrators have recognized that the purpose of prison CCCs is to screen, identify and monitor patients with chronic illnesses in order to initiate appropriate therapeutic regimens and to provide patient education and counseling on healthy practices.  Id. ¶ 36.

From 2000 to the present, various medical personnel employed by Corizon examined plaintiff in the CCC.  Id. ¶ 38.  In the summer of 2000, defendant Dr. Kosierowski diagnosed plaintiff with high blood pressure.  Id. ¶ 43.  Subsequent to that diagnosis, the various medical defendants prescribed and refilled prescriptions for medications including Docusate, Acetadinophen, Malodipine, Lisinopril, HCTZ, Aspir-law and Bisacodl.  Id. ¶ 45.  A non-defendant doctor, Dr. Rosen, discontinued Lisinopril on June 7, 2011 and put plaintiff on Cozaar/Losartan.  Id. ¶ 47.

During the years 2005 and 2006, the medical defendants further examined plaintiff numerous times for the purpose of monitoring his high blood pressure and kidneys and to determine how he was responding to the cocktail of medicines they had prescribed.  Id. ¶ 48.  These tests included blood tests, urine tests and physical examinations, all of which are commonly used to determine whether a patient has or is developing kidney cancer.  Id. ¶ 49.  On March 15, 2006, a medical professional employed by Corizon made a notation on plaintiff's medical chart as follows:  "UA:  Trace protein Micro Albumin [sic] 5.2 Hi."  Id. ¶ 50.  This

3

finding was significant because when the kidneys are damaged, small amounts of albumin leak into the urine, a condition known as microalbuminuria.  Id. ¶ 52.  Microalbuminuria can be caused by high blood pressure and, if not treated early, can lead to chronic kidney disease.  Id. ¶ 53.  On March 15, 2006, plaintiff's microalbumin level was nearly three times the highest normal level.  Id. ¶ 54.  Yet, the medical defendants never performed another microalbumin test on plaintiff.  Id. ¶¶ 55–56.

On April 12, 2006, Dr. Zaro remarked that plaintiff had proteinuria and stated, in the medical record, that he would "add ACE for renal protection HTCZ."  Id. ¶ 57.  On that date, plaintiff was taking Cozaar/Losartan to treat his high blood pressure.  Id. ¶ 58.  Plaintiff alleges that Dr. Zaro knew or should have known that "concomitant use of [Cozaar/L]osartan and ACE-inhibitors has [been] shown to impair renal function," not protect plaintiff's kidneys or improve their functioning.  Id. ¶ 59.  Later in 2006, Dr. Kosierowski informed plaintiff that over the last six years, the cocktail of medicines that he and his colleagues had been prescribing would affect plaintiff's kidneys, but remained evasive on what that effect would be.  Id. ¶¶ 60–61.  Indeed, Dr. Kosierowski refused to answer plaintiff's direct question regarding the risk of kidney cancer from the medications.  Id. ¶ 62.  Plaintiff alleges that Dr. Kosierowski, as well as all the medical defendants, knew at that time that plaintiff had or would imminently develop kidney cancer.  Id. ¶¶ 63–64.

When the medical defendants discovered plaintiff had kidney cancer, the disease had not metastasized, making treatment relatively straightforward.  Id. ¶ 66.  Nonetheless, the medical defendants knowingly and willfully refused to use preventative medicine or send plaintiff to out-of-prison medical centers and doctors for prompt and adequate testing because they receive financial bonuses for avoiding use of such measures.  Id. ¶¶ 65, 67.  Instead, these defendants

4

allowed plaintiff to suffer from kidney cancer due to their financially-based motivations.  Id. ¶ 68.

As of March 2011, the medical defendants had neglected to conduct proper medical examinations and failed to properly inform plaintiff of the true severity and extent of his medical conditions.  Id. ¶ 73.  On March 9, 2011, Dr. Stefanic examined plaintiff in connection with plaintiff's complaints of increasing abdomen pains over three days.  Id. ¶ 74.  Dr. Stefanic diagnosed his condition as possible constipation and prescribed lactulose/mineral oil.  Id. ¶ 75.  The doctor did not order another microalbumin test.  Id. ¶ 77.  Several hours later, plaintiff returned to the dispensary complaining of increased mid-abdominal pain.  Id. ¶ 82.  An unknown and non-defendant doctor diagnosed plaintiff's condition as an acute bowel obstruction and ordered an immediate transfer to an emergency room for further evaluation.  Id. ¶ 83.  Upon transfer to Suburban Mercy Hospital in Norristown, plaintiff was examined by a non-prison doctor and was told, following radiographic testing, that he had cancer in both of his kidneys.  Id. ¶ 88.  The doctor further informed plaintiff that the tumor in his right kidney had grown to the size of a grapefruit or softball.  Id. ¶ 89.  Thereafter, plaintiff was transferred to SCI-Pittsburgh for further examination and treatment.  Id. ¶ 90.

On March 25, 2011, Dr. Gina M. Rooker, M.D., a non-prison doctor and an expert in urologic oncology, examined plaintiff.  Id. ¶ 91.  She opined that plaintiff should never have had such a large cancerous growth and that the medical defendants should have known of the cancer long before it metastasized to his left kidney.  Id.  She ordered a battery of tests to confirm the extent of damage to his kidneys and determined that he needed surgery to remove both the right kidney and cancerous tissue from the left kidney.  Id. ¶ 93.  On May 24, 2011, Dr. Rooker removed plaintiff's right kidney, which had been totally destroyed by the cancer.  Id. ¶ 94.  On

September 27, 2011, Dr. Rooker performed a second surgery and removed the cancerous tissue from plaintiff's left kidney.  Id. ¶ 98.

After plaintiff discovered that he had kidney cancer, he filed an inmate grievance pursuant to PA-DOC, DC-ADM 804.  Id. ¶ 100.  That grievance was rejected as untimely.  Id.  Plaintiff then filed another inmate grievance on June 27, 2011 and addressed it directly to Superintendent Michael Wenerowicz.  Id.  When he received no response, plaintiff filed an appeal to the Secretary's Office of Inmate Grievances and Appeals, which told him that he had not properly appealed to the Facility Manager at SCI-Graterford.  Id.

Plaintiff filed a pro se complaint on December 14, 2010 (Civil Action No. 10-7165) against Prison Health Services (now known as Corizon), the Commonwealth of Pennsylvania, medical personnel and multiple individual state defendants.  On March 29, 2012, he filed another case in this court (Civil Action No. 12-1271) against Corizon and the medical defendants.  Plaintiff retained counsel on February 28, 2013 and, on May 23, 2013, I consolidated both civil matters.

Plaintiff then filed an amended complaint on August 7, 2013.  Following review of the medical defendants' motion to dismiss, I entered an order dated March 30, 2016, dismissing with prejudice (1) any claim regarding an alleged arm injury from a hepatitis C injection, (2) the breach of contract claim and (3) the medical malpractice claims.  As to plaintiff's remaining constitutional and state tort claims, I dismissed them without prejudice to plaintiff's right to amend.  Finally, I directed that plaintiff could not include any new claims against defendants Wenerowicz, Korszniak, Shaylor or Wolff, as they had been previously dismissed and plaintiff had not timely filed an amended complaint against them.  See Memorandum, ECF No. 63.

On April 18, 2016, plaintiff filed his second amended complaint setting the following causes of actions:  (1) violations of his constitutional and civil rights by Corizon and the medical defendants (Count I); (2) a custom, policy and practice of deliberate indifference by Corizon (Count II); (3) a state-created danger claim against the Commonwealth (Count III); (4) negligence against Corizon (Count IV); (5) intentional infliction of emotional distress against all defendants (Count V); and (6) a conspiracy by all defendants to violate his constitutional rights (Count VI).

The moving defendants—Corizon, Dr. Blatt, Dr. McDonald, Dr. Kosierowski, PA Machak and the Does—filed the present motion to dismiss on August 4, 2016, and plaintiff responded on November 1, 2016.  The motion is now ripe for judicial consideration.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.

Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a

prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's factual allegations must be enough to raise a right to relief above the "speculative level"), quoting Twombly, 550 U.S. at 555.

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Fed. R. Civ. P. 8(a); Phillips, 515 F.3d at 233. Further, even after Iqbal, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to plaintiff, and then determine whether a reasonable inference may be drawn that the defendant is liable for the alleged misconduct." Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011).

**DISCUSSION**

Defendants move to dismiss all claims against them in the Second Amended Complaint.[2] I address each argument individually and dismiss only Count I as against Corizon and Count VI as against all moving defendants.

## I.   Section 1983 Claim Against The Medical Defendants for Deliberate Indifference to a Serious Medical Need (Count I)

In Count I, plaintiff alleges that the medical defendants knowingly, intentionally, willfully maliciously, wantonly, grossly negligently, recklessly and deliberately indifferently "failed to provide adequate and prompt medical responses for his serious medical needs for years . . . due to their habitual failures and their participation in cost saving and bonus driven schemes." Sec. Am. Compl. ¶ 105(d). He goes on to assert that the medical defendants' treatment of him fell below the level of medical treatment to which he was constitutionally entitled under the Eighth and Fourteenth Amendments. Id. I find that he has successfully stated a claim in Count I.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103–105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Id. at 104. The necessary inquiry, therefore, is bifurcated: the medical need must be serious and the defendants must have exhibited deliberate indifference. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

---

[2]   Count III alleges a claim for a state-created danger against only the Commonwealth of Pennsylvania, who is not among the moving defendants. Moving defendants do not seek dismissal of this claim.

The parties do not dispute the "seriousness" of plaintiff's medical need in this case. "Seriousness" is proven if a plaintiff is able to demonstrate that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"  Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), quoting Pace v. Fauver, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981).  Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." Lanzaro, 834 F.2d at 347.  Plaintiff's kidney cancer, which resulted in the total loss of one kidney, clearly constitutes a serious condition for purposes of the Estelle test.

To demonstrate the deliberate indifference prong of Estelle, a plaintiff must show that the defendants were more than merely negligent in diagnosing or treating his serious medical condition.  Mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment. White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Lanzaro, 834 F.2d at 346.  Rather, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  Farmer v. Brennan, 511 U.S. 825, 837 811 (1994).  The Court of Appeals has concluded that the deliberate indifference standard is met "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment."  Whooten v. Bussanich, 248 F. App'x 324, 326–27

(3d Cir. 2007), citing Lanzaro, 834, F.2d at 346–47; Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Plaintiff's Eighth Amendment claim on behalf against the medical defendants[3] appears to be premised on two separate sets of facts.  Under his first theory, plaintiff contends that the medical defendants violated his rights by prescribing him a "cocktail" of medications to treat his high blood pressure, which the defendants should have known "may have doomed him from the outset" and which unnecessarily exposed him to a high risk of kidney cancer.  Sec. Am. Compl. ¶¶ 46, 50-64(c).  Such allegations, taken in the light most favorable to plaintiff, do not state a plausible claim of deliberate indifference.  Plaintiff does not allege failure to treat and, in fact, concedes that he received medical treatment for his high blood pressure, including regular examinations and blood monitoring to determine how he was responding to the medications.  Id. ¶ 45.  To the extent plaintiff disagreed with the course of treatment, such disagreement does not constitute an Eighth Amendment violation.  Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009).  Moreover, to the extent plaintiff claims only that the medications had the undesirable side effect of impacting his kidney function, such a claim sounds only in negligence absent the requisite intent to harm plaintiff.  See Rozelle v. Rossi, 307 F. App'x 640, 642–43 (3d Cir. 2008) (negligence in medication prescription does not rise to the level of a constitutional violation); Jones v. Chandler, No. 04-1877, 2005 WL 1941314, at *4 (E.D. Pa. Aug. 9, 2005) (failure to inform of side effects of medication is nothing more than negligence).

Plaintiff's second theory of Eighth Amendment liability has significantly more merit.  He asserts that despite the medical defendants' awareness that the various medications affected

---

[3]     Notably, the medical defendants are all medical professionals employed by a private company.  Nonetheless, "[a] private doctor who provides medical services to inmates pursuant to a contract with the prison may be held liable in a civil rights suit."  Hetzel v. Swartz, 909 F.Supp. 261, 263–264 (M.D. Pa. 1995).

plaintiff's kidneys, and despite a 2006 microalbumin urine test revealing the presence of urinary

protein, the medical defendants failed to adequately monitor his kidney function and

diagnose/treat plaintiff's kidney cancer due to both financial motivations promulgated by

Corizon and an inherent bias against African-American inmates serving life sentences.  Sec. Am.

Compl. ¶¶ 54–81.  Indeed, he alleges that, over many years, he complained of blood in his urine,

pain in his abdomen and weight loss, but the medical defendants disregarded this symptoms.  Id.

¶ 100.  By the time the medical defendants finally had him evaluated by out-of-prison medical

professionals, he had a 3.8 inch size tumor in his right kidney and cancer cells in his left kidney.

Id. ¶¶ 88–91.  These collective actions constitute a delay in and deprivation of medical treatment

for non-medical reasons.

      Defendants challenge this theory as a mere failure to diagnose which should not survive

Rule 12(b)(6) scrutiny.  They correctly note that a court will generally not "second-guess the

propriety or adequacy of a particular course of treatment . . .  [since such determinations]

remain[] a question of sound professional judgment."  Inmates of Allegheny Cnty. Jail v. Pierce,

612 F.2d 754, 762 (3d Cir. 1979) (quotations omitted).  "[A]s long as a physician exercises

professional judgment his behavior will not violate a prisoner's constitutional rights."  Brown v.

Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990 ).  A prisoner's claims of negligent

diagnosis or treatment do not rise to the level of deliberate indifference.  Estelle, 429 U.S. at

105–06 (finding "in the medical context, . . . a complaint that a physician has been negligent in

diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

under the Eighth Amendment"); see also Wilson v. Seiter, 501 U.S. 294, 297 (1991)

("allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent . . .

diagnosis' fail to establish the requisite culpable state of mind") (internal citations omitted).

Further, a doctor's decision not to order specific forms of diagnostic treatment, an x-ray for example, constitutes medical judgment, which is not actionable. Estelle, 429 U.S. at 107.

Plaintiff's claim, however, goes beyond mere negligent failure to diagnose and alleges grossly inadequate treatment motivated by non-medical reasons. Prison officials "may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment" particularly if that care is grossly inadequate. McCarthy v. Place, 313 F. App'x 810, 814 (6th Cir. 2008) (quotation omitted). Where the care received by an inmate was clearly inadequate, the intent of the medical provider becomes critical:  "if the inadequate care was a result of an error in medical judgment . . . [the plaintiff's] claim must fail; but, if the failure to provide adequate care . . . was deliberate, and motivated by non-medical factors, then [the plaintiff] has a viable claim." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "An intentional refusal to provide diagnostic care that prison doctors know is needed constitutes deliberate indifference." Rodriguez v. Smith, No. 03-3675, 2006 WL 680965, at *12 (E.D. Pa. March 16, 2006), citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703-04 (11th Cir. 1985). Moreover, "reliance on non-medical factors, such as budgetary considerations, in deciding not to order a procedure may support a claim of deliberate indifference." Steward v. Wenerowicz, No. 12-4046, 2015 WL 5092865, at *14 (E.D. Pa. Aug. 27, 2015) (declining to dismiss complaint where plaintiff alleged that prison doctor delayed an X-ray of a diagnosed serious condition in order to cut costs), citing Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011) (acknowledging that denials of medical care based on non-medical factors, such as cost-saving, may violate the Eighth Amendment); Shultz v. Allegheny Cnty., 835 F. Supp. 2d 14, 22 (W.D. Pa. 2011) (same); Boswell v. Sherburne Cnty., 849 F.2d 1117, 1123

(8th Cir. 1988) (concluding that basing treatment decisions on efforts to cut costs amounted to a plausible claim for deliberate indifference).

Repeatedly, courts have declined to dismiss deliberate indifference claims where the plaintiff has alleged inadequate treatment motivated by non-medical reasons.  For example, in Shultz v. Allegheny County, 835 F. Supp. 2d 14 (W.D. Pa. 2011), the court addressed the question of whether the prison medical defendants' failure to provide appropriate treatment of the plaintiff's pneumonia symptoms, ultimately leading to her death, constituted deliberate indifference.  Id. at 17.  The plaintiff's representative alleged that despite the plaintiff's various symptoms, the prison medical staff, in an effort to control and contain costs, delayed performing diagnostic tests and transferring the plaintiff to an outside hospital.  Id.  The defendants contended that merely pointing to a policy of implementing cost savings fails to satisfy the threshold needed to plead an adequate deliberate indifference claim.  Id. at 22.  The court, however, found "the facts alleged and the reasonable inferences drawn therefrom are enough to nudge the Eighth Amendment claim across the line between a possible and plausible claim for relief" and create a "reasonably founded hope that the [discovery] process will reveal relevant evidence to support the claim."  Id., quoting Twombly, 550 U.S. at 563 n.8.

Similarly, in DeMeo v. Koenigsmann, No. 11-7099, 2015 WL 1283660 (S.D.N.Y. March 20, 2015), the inmate plaintiff claimed that one of the defendant doctors was deliberately indifferent to the plaintiff's serious medical needs by approving an x-ray when only an MRI would reveal the problem and by denying the initial request for an MRI based on "purely financial considerations."  Id. at *12.  The plaintiff asserted that the doctor put financial considerations over the plaintiff's health.  Id.  Notwithstanding the defendants' arguments that the allegations were merely attacks on the doctor's medical judgment and that the plaintiff had

14

not alleged any facts supporting his contention that the denial was financially motivated, the court accepted as true plaintiff's claims that the denial of the MRI request was financially motivated and that plaintiff's serious medical needs resulted from that delay.  Id. at *3.  In so ruling, the court reasoned that " '[i]t may be that [plaintiff] has no proof whatsoever of [defendant's] improper motive, and that lack of proof may become apparent at summary judgment.  But even if [the court] think[s] it highly unlikely that [plaintiff] will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim.' "  Id., quoting Chance v. Armstrong, 143 F.3d 698, 704 (2d Cir. 1998).

Accepting plaintiff's allegations as true in this case, plaintiff has set forth facts that show that the delay in diagnosis and treatment of his kidney cancer resulted from deliberate indifference by the medical defendants.  Plaintiff asserts that he was originally diagnosed with high blood pressure by Dr. Kosierowski in the summer of 2000.  Sec. Am. Compl. ¶ 43. Thereafter, the various medical defendants prescribed for him a variety of medications that, taken together, are known to impact kidney function.  Id. ¶ 45.  During the years 2005 and 2006, the medical defendants examined plaintiff twice a year to monitor his high blood pressure and kidney function and performed both blood and urine tests.  Id. ¶¶ 48–49.  On March 15, 2006, a medical professional noted "[t]race protein Micro Albumin 5.2 Hi" in plaintiff's urine.  Id. ¶ 50. That level was nearly three times the highest normal level.  Id. ¶ 54.  Yet, plaintiff's medical records did not reveal that the medical defendants ever performed another microalbumin test.  Id. ¶ 56.  Moreover, during his subsequent medical examinations, plaintiff had several unexplained symptoms, including visible blood in his urine, severe pain in his flank, weight loss and high blood pressure.  Id. ¶ 100(d).  Despite plaintiff's request for a CT scan or MRI, however, prison medical staff refused to do so to save costs.  Id.  At the time the medical defendants originally

discovered plaintiff's kidney cancer, the cancer had not metastasized.  Id.  ¶ 66.  Nonetheless, the

medical defendants, despite knowing that plaintiff had cancer, failed to undertake any further

preventative care by sending plaintiff to out-of-prison specialists for prompt and adequate testing

and treatment.  Id. ¶ 67.  Then, on March 9, 2011, plaintiff saw Dr. Stefanic with complaints of

increasing abdomen pain.  Dr. Stefanic diagnosed him with possible constipation, without

considering his history and without ordering another microalbumin test.  Id. ¶¶ 74–77.  When

plaintiff returned to the medical center later that night, an unknown doctor finally had him

transferred to an outside hospital where a CT scan revealed cancer in both kidneys, including a

grapefruit-sized tumor in his right kidney.  Id. ¶¶ 82–83, 88–89.  On March 25, 2011, a non-

prison doctor told plaintiff that the medical defendants should have known about the cancer long

before it metastasized.  Id. ¶ 91.  Ultimately, plaintiff lost his entire right kidney and a portion of

his left kidney.  Id. ¶¶ 92, 98.  He attributes this result to the medical defendants' willful denial

of access to out-of-prison treatment and testing motivated in part by financial considerations and

by a plan to hasten the deaths of prisoners with life sentences.[4]  Id. ¶ 8

     At this juncture, plaintiff's allegations of purposeful delay in diagnosis and treatment

suffice to state a plausible claim of deliberate indifference.[5]  Going forward, however, plaintiff's

---

[4]    Defendants provide an entirely separate argument in their motion regarding plaintiff's alleged failure to plead "but for" causation as to his federal claims.  See Defs.' Mot. Dismiss, ECF No. 72, at pp. 34–35.  My discussion of that argument is subsumed within sections I and II of this opinion.

[5]    Defendants cite several cases in support of their opposing position that plaintiff's allegations do not set forth a claim of deliberate indifference.  I find none of these cases to be relevant here.  First, they reference Bearam v. Wigen, 542 F. App'x 91 (3d Cir. 2013) as an analogous case wherein the Court of Appeals affirmed the dismissal of an Eighth Amendment claim alleging the failure to diagnose and treat a brain tumor and other serious conditions.  In that case, however, the defendant doctor's examination of plaintiff did reveal the condition that plaintiff claimed he had.  Id. at 93.  The Court of Appeals found that "while Dr. Cutler could conceivably be wrong, he cannot consciously disregard a risk he has found reason to believe

failure to adduce sufficient proof that the medical defendants knew of plaintiff's condition and purposefully delayed diagnosis and treatment of that condition for non-medical reasons may result in dismissal of the case on summary judgment.  Moreover, and equally importantly, plaintiff must identify the specific conduct of each of the individual defendants and delineate how each individual defendant acted in a deliberately indifferent manner.  Reliance on the cumulative conduct of the medical defendants will not be sufficient to establish their individual liability.  See Rouse v. Plantier, 182 F.3d 192, 200 (3d Cir. 1999).[6]  Taking all reasonable inferences in plaintiff's favor at this early stage of the litigation, however, I find that plaintiff has pled a plausible claim of deliberate indifference against the medical defendants.

---

does not exist."  Id.  There was no allegation that the failure to treat was motivated by non-medical reasons.  Id.  By contrast in this case, neither party disputes that plaintiff is suffering from advanced kidney cancer, and plaintiff has asserted that the failure to diagnose and treat him earlier resulted from financial considerations.

Defendants also rely on Bramson v. Sulayman, 251 F. App'x 84, 86 (3d Cir. 2007) for the proposition that a delay in sending the plaintiff for treatment fails to constitute deliberate indifference.  Contrary to defendants' argument, the Court of Appeals in Bramson specifically recognized that "delay in rendering necessary medical care for non-medical reasons can constitute deliberate indifference under certain circumstances."  Id. at 86.  In that case, however, the plaintiff did not allege that any of the doctors actually knew or believed that treatment by an outside physician was necessary and intentionally delayed it.  Id.  Rather, the plaintiff pled that he first saw the prison doctor in the same month that he was sent to an outside consultant.

Finally, Defendants cite to Carter v. Smith, No. 08-279, 2011 WL 2313862 (E.D. Pa. June 13, 2011), alleging that failure to obtain radiographic testing because of financial reasons is not deliberate indifference.  Carter is not compelling here because that case was decided on a motion for summary judgment at which time the court was examining whether the plaintiff had produced sufficient evidence in support of his claims.  Plaintiff need not achieve the same level of proof at the motion to dismiss stage.

[6]     Defendants cite a series of cases for the proposition that a complaint contain actual averments that describe each defendant's actions giving rise to his or her liability.  Defs.' Mot. Dismiss, ECF No. 72, at 24, citing Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir. 1996); Meier v. Cnty of Presque Isle, 376 F. App'x 524 (6th Cir. 2010); Burnette v. Taylor, 533 F.3d 1325 (11th Cir. 2008); Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999).  Notably, however, all of these cases were decided on summary judgment and did not define any pleading standards.

## II.     Section 1983 Claims Against Corizon (Counts I and II)

Plaintiff next alleges that Corizon is liable for the constitutional violations of the medical defendants.  In the seminal case of Monell v. Department of Social Services, 436 U.S. 658 (1978), the United States Supreme Court confirmed that "Congress *did* intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."[7]  Id. at 690–91 (emphasis in original).  Instead, "[a] local government may be sued under § 1983 only for acts implementing an official policy, practice or custom." Losch v. Borough of Parkesburg, Pa., 736 F.2d 903, 910 (3d Cir. 1984), citing Monell, 436 U.S. at 690–91; see also Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013), citing Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  A government policy or custom can be established in two ways.  See Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  The plaintiffs may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued an official statement of policy.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  The plaintiffs may establish that a course of conduct constitutes a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" that they operate as law.  Monell, 436 U.S. at 690.  In either instance, the plaintiffs have the burden of showing that a

---

[7]     Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates is similar to a municipality in that it cannot be held liable on a respondeat superior theory.  Gannaway v. Prime Care Med., Inc., 150 F. Supp. 3d 511 (E.D. Pa. 2015).  "[R]ather, pursuant to Monell, such a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." Gannaway, 150 F. Supp. 3d at 350, citing Natale v. Camden Cnty Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003); see also Weighner v. Prison Health Servs., 402 F. App'x 668, 669–70 (3d Cir. 2010) (holding that a private corporation providing healthcare to state prisoners cannot be held liable under a respondeat superior theory).

government policymaker is responsible by action or acquiescence for the policy or custom. <u>Andrews</u>, 895 F.2d at 1480. The Court of Appeals has also held that, at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability. <u>San Filippo v. Bongiovanni</u>, 30 F.3d 424, 445 (3d Cir. 1994).

Guided by such principles, the Court of Appeals has explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

<u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotation marks and citations omitted).

The second amended complaint offers two independent theories of <u>Monell</u> liability in Counts I and II.  Defendants moves to dismiss both theories.  I address them individually.

**A.     Count I**

In Count I of the second amended complaint, plaintiff alleges as follows:

> Defendant, CORIZON has been on notice of acts of deliberate indifference by CORIZON, its employees, nurses, doctors, independent contractors, contractors and sub-contractors against Mr. Robinson and thousands of other PA-DOC inmates for many years, but have knowingly, intentionally, willfully, maliciously,

> wantonly, grossly negligent, recklessly and deliberately indifferent
> to the constitutional, civil and other federally guaranteed rights of
> Mr. Robinson failed to take any corrective actions, such as
> implementing additional auditing, training, different disciplinary
> practices, different hiring and firing practices, providing effective
> supervision and not covering up or ignoring past misconduct by
> CORIZON, its employees, nurses, doctors, independent
> contractors, contractors and sub-contractors against PA-DOC
> inmates and other official misconduct by CORIZON, its
> employees, nurses, doctors, independent contractors, contractors
> and sub-contractors, such as Defendants, Drs. Blatt, McDonald,
> Kosierowski, Stefanic, Zaro, P.A. Machak and P.A.-C Masino and
> the "Does", like them, Defendant CORIZON has been motivated
> by financial considerations instead of health care.

Sec. Am. Compl. ¶ 105(b); see also id. ¶ 105(c).  Defendants reasonably interpret this cause of

action as alleging that Corizon is liable under a failure to properly hire, train or discipline its

employees.  They argue, however, that the complaint fails to state a plausible claim for relief.  I

agree.

The Supreme Court has recognized a cause of action for failure to train or discipline

employees under § 1983 where liability attaches only after a showing that the failure to train or

discipline amounted to a "deliberate indifference to the rights of [others]."  City of Canton, Ohio

v. Harris, 489 U.S. 378, 389 (1989).  This "deliberate indifference" standard is an objective

standard different than the subjective deliberate indifference standard that is applied under the

Eighth Amendment.  See Farmer v. Brennan, 511 U.S. 825, 840–847 (1994).  Canton teaches

that the failure to train an employee must be a choice on the part of the supervisor or supervising

entity knowing that the training that is (or is not) being provided is not sufficient for the

employees and the choices they encounter on the job.  489 U.S. at 388–90.

To maintain a claim for failure to properly train or discipline, a plaintiff must show that

"a responsible municipal policymaker had contemporaneous knowledge of the offending

occurrence or knowledge of a pattern of prior incidents of similar violations of constitutional

20

rights and failed to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinates." Garcia v. Cnty. of Bucks, Pa, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (citations omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for . . . failure to train." Simpson v. Ferry, ___ F. Supp. 3d ___, 2016 WL 4247546, at *7 (E.D. Pa. Aug. 10, 2016) (internal quotation marks and further quotations omitted). "A need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Garcia, 155 F. Supp. 2d at 268.

Here, plaintiff has not alleged any policy of inadequate training or discipline. Nor has plaintiff identified what training or discipline Corizon should have put into place in order to avoid a constitutional violation. The amorphous claim that Corizon should have implemented additional hiring, training, auditing and disciplinary practices offers nothing more than a legal conclusion to which I need not accept as true. See Giamboi v. Prison Health Servs., 2011 WL 5322769, at *11 (M.D. Pa. 2011) ("[T]he allegation that defendants PHS and PHS Correctional . . . had a policy or custom of inadequate training in dealing with prisoners with severe medical problems is also conclusory. The complaint does not allege in what regard or how the training was inadequate."). Moreover, the bare allegation that, "since 1991, the companies that make up Corizon have been sued more than 6,000 times for corporate negligence," see Sec. Am. Compl. ¶ 22, neither demonstrates that Corizon was actually liable for any such incidents nor establishes a pattern of prior incidents of factually similar violations of constitutional rights. Without an

identified deficiency, plaintiff has not sufficiently pleaded a failure-to-train claim against the

City.[8]

### B.    Count II

By contrast, plaintiff's second theory of <u>Monell</u> liability against Corizon states a

plausible claim for relief.  Count II of the Second Amended Complaint is entitled "Custom,

Policy and Practice of Deliberate Indifference" and alleges, in pertinent part:

> 108.    As a provider of medical services at SCI-Graterford,
> Defendant CORIZON acts under the color of state law.
>
> 109.    For more than 11 years, Defendant CORIZON's policy
> makers and other decision making officials at SCI-Graterford acted
> with deliberate indifference to the medical needs of Plaintiff while
> he was an inmate at SCI-Graterford.
>
> 110.    For more than 11 years, Defendant CORIZON's policy
> makers and other decision making officials at SCI-Graterford
> adopted a custom, policy and practice of willful silence and willful
> subjection of Plaintiff to the day-to-day incompetent, negligent and
> deliberately indifferent medical treatment by Defendant
> CORIZON, its employees, nurses, doctors, independent
> contractors, contractors and sub-contractors that was so widespread
> that it became the policy of Defendant CORIZON and amounted to
> cruel and unusual punishment.
>
> 111.    For more than 11 years, Defendant CORIZON's policy
> makers and other decision making officials at SCI-Graterford
> adopted a custom, policy and practice of rewarding employees,
> nurses, doctors, independent contractors, contractors and sub-
> contractors at SCI-Graterford for not sending patients to outside-

---

[8]    Defendants also argue that plaintiff fails to establish liability against Corizon under the
single decision of a final policymaker theory.  Under this theory, municipal liability may be
predicated on the single decision of a municipal policymaker as opposed to a pattern of incidents.
<u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986).  Neither the second amended
complaint nor plaintiff's response in opposition to the motion to dismiss, however, sets forth
such a theory.  To the extent plaintiff intended to rely on this basis, this claim would fail.  A
complaint making such a <u>Monell</u> claim must include the identity of the municipal entity's final
policymaker.  <u>See Santiago v. Warminster Twp.</u>, 629 F.3d 121, 135 & n.11
The second amended complaint neglects to identify any individual with final policymaking
authority.

of-prison specialist even when it was medically necessary that was so widespread that it became the policy of Defendant CORIZON and amounted to cruel and unusual punishment.

112.    As a result of Defendant CORIZON's policy makers and other decision making officials at SCI-Graterford calloused and deliberately indifferent conduct, custom, policy and practice of willful silence and willful subjection of Plaintiff to the day-to-day deliberately indifferent medical treatment by Defendant CORIZON, its employee, nurses, doctors, independent contractors, contractors and sub-contractors Plaintiff has suffered and continues to suffer great pain and suffering, emotional distress, mental anguish and loss of his constitutional, civil, other federal and state rights.

Sec. Am. Compl. ¶¶ 107-12.  Plaintiff clarifies that his claim alleges that Corizon has maintained a "policy of inaction" by delaying diagnosis and proper treatment of inmates for financial reasons.  Specifically, he asserts that Corizon "has turned a blind eye to and/or encouraged" the individual defendants to engage in "cost saving and bonus driven actions."  Id. ¶ 28.  He contends that the individual defendants could have taken actions to prevent the spread of his kidney cancer by referring him to out-of-prison medical centers and doctors for prompt and adequate testing and treatment, but did not do so in order to receive financial bonuses offered by Corizon for not outsourcing care for inmates.  Id. ¶¶ 65, 67–68.  He further alleges that Corizon maintains a policy, custom and practice of failing to provide prompt and adequate care to African-American men, particularly those serving a life sentence, in order to bring about a premature end of their sentence.  Id. ¶ 81.  To factually support these allegations, he notes that despite the various warning signs and symptoms that the individual medical defendants should have recognized as signs of kidney cancer, they failed to engage in any radiographic testing or refer him to non-prison doctors.  Id. ¶¶ 87–88.

Although the Court of Appeals rejected a seemingly similar allegation in in Winslow v. Prison Health Servs., 406 F. App'x 671 (3d Cir. 2011), I do not find that case controlling of the

23

matter before me.  In that case, the prisoner plaintiff alleged that he repeatedly complained of

hernia symptoms and received treatment, but the prison doctors declined to order surgery

because of financial considerations.  Id. at 674.  The court found such assertions were

"exceedingly conclusory," noting:

> [T]he complaint does not provide any indication either of (1) what
> the relevant policies are, (2) what basis [the plaintiff] has for
> thinking that "policies to save money" affected his medical
> treatment, or (3) what specific treatment he was denied as a result
> of these policies. More fundamentally, the naked assertion that
> Defendants considered cost in treating [the plaintiff] does not
> suffice to state a claim for deliberate indifference, as prisoners do
> not have a constitutional right to limitless medical care, free of the
> cost constraints under which law-abiding citizens receive
> treatment. . . . Thus, because the complaint pleaded only that [the
> plaintiff] was subjectively dissatisfied with his medical treatment
> and alleged in the most conclusory terms that Defendants
> considered cost in providing his care, the District Court properly
> dismissed his claims . . .

Winslow v. Prison Health Servs., 406 F. App'x 671, 674–75 (3d Cir. 2011).  Crucial to that

decision was the court's finding that the plaintiff had not been denied medical care outright, but

rather received a different form of treatment than he desired, albeit one that was effective.  Id. at

674 (affirming district court's position that while the complaint contained a plausible claim that

the plaintiff was denied medical care outright prior to the issuance of the hernia belt, once he was

issued the belt, he had pleaded no facts suggesting that the defendants knew of and disregarded

an excessive risk to inmate health or safety).  The court remarked that even if that medical

treatment decision was motivated in part by financial considerations, it was not objectively

unreasonable such that it could give rise to a constitutional violation.  Id.

 Winslow is factually distinguishable from the present case because plaintiff here has

alleged a denial of medical treatment based on financial considerations, as opposed to simply

claiming disagreement with the treatment provided.  Indeed, numerous district courts considering

allegations of financially-motivated denial of medical treatment have distinguished Winslow on

its facts and found that such an allegation can give rise to Monell liability.  For example, in

Stewart v. Wenerowicz, No. 12-4046, 2015 WL 5092865 (E.D. Pa. Aug. 27, 2015), the inmate

plaintiff alleged that he began suffering extreme pain in his shoulder and knee.  Id. at *2.

Although he was examined multiple times, his treatment was minimal and the doctors delayed in

scheduling radiographic studies.   Id.  Ultimately, an x-ray showed damage to the left region of

the plaintiff's neck, but the prison medical staff failed to provide him with additional pain

medication or any other treatment.  Id. at *3.  The plaintiff alleged that the corporate provider,

Corizon, instituted a number of policies and customs that led its employees to disregard inmates'

medical needs and delay provision of medical services.  These policies included denying medical

treatment for non-medical reasons, prioritizing financial considerations over the health and safety

of inmates, failing to develop or implement procedures that ensured adequate treatment of

inmates' medical needs and preventing inmates from receiving necessary or recommended

medication and medical treatment.  Id. at *16.  The court found that plaintiff's allegations

regarding Corizon's deficient policies or customs were sufficient to set forth a Monell claim.  Id.

at *16.

In Giamboi v. Prison Health Servs., Inc., No. 11-1559, 2011 WL 5322769 (M.D. Pa. June

2, 2011), the plaintiff, a prisoner, repeatedly complained about sciatica-like symptoms, but the

prison medical defendants limited his access to doctors, appropriate diagnostic testing and other

care that would have determined the cause of and solution to his medical problems.  Id.  at *1.

According to the complaint, despite plaintiff's unbearable pain and other symptoms, the

defendants did not order an MRI, dismissed him on numerous occasions and gave him enemas to

spur bowel movement.  Id. at *2.  After the plaintiff's mother intervened, he was examined by an outside doctor and diagnosed with cauda equine syndrome, which is a chronic condition.  Id. Although plaintiff underwent almost immediate surgery, he lost substantial physiologic function in his body with no hope of recovery.  Id.  In his complaint, he alleged that Prison Health Services maintained the following policies or customs:  providing the least amount of medical care possible, delaying care as long as possible, not ordering MRIs when clinical symptoms cannot be explained by other tests, treating symptoms rather than the root cause of the problem and prioritizing the saving of money over the diagnosis and treatment of inmates.  Id. at *3. Although the court dismissed some of the custom and policy claims as conclusory, it found that some of plaintiff's claims were sufficient to survive a Rule 12(b)(6) motion to dismiss.  Id. at *10–11.  The court explained that although plaintiff's allegations were not detailed, plaintiff identified the policy and custom and gave context to his allegations by describing his condition and the care which he received.  Id. at *11.

Similarly, in Zeigler v. PHS Correctional Health Care, Inc., No. 11-203, 2013 WL 625364 (W.D. Pa. Feb. 20, 2013), the inmate plaintiff injured himself and went to Prison Health Services, which diagnosed him with muscle strain.  Id. at *2.  Despite plaintiff's continued complaints of severe pain, limping, discoloration and bulging, he was not seen by a doctor until he transferred prisons for a court hearing, at which time the new prison's doctor believed he had ruptured his Achilles tendon and needed an MRI.  Id.  Nonetheless, months passed before he received an MRI, after which time PHS denied the recommendation for surgery because plaintiff would soon be released from prison.  Id. at *3–4.  The plaintiff alleged that medical decisions were based in large part on how long the inmate will be at the facility and not on the basis of medical need.  Id. at *3.  The court denied PHS's motion to dismiss this claim, finding that the

plaintiff had "sufficiently pled that PHS has a custom of delaying medical treatment for non-medical reasons, and that delay in diagnosis and proper treatment caused Plaintiff to suffer additional pain, as well as a deformity from his improperly healed injury." Id. at *5.

Finally, in Dupree v. Doe, No. 10-351, 2012 WL 2087788 (D. Del. June 7, 2012), the inmate plaintiff alleged that he suffered from a skin condition that was ignored by the prison, and which ultimately resulted in his multi-month hospitalization, operations, scarring and near loss of life. Id. at *1. He further claimed that the prison medical services' policies and customs of cost avoidance were the driving force behind the indifference to his serious medical needs, and that the defendant provided the least efficacious medical care for the purpose of saving money. Id. Although the defendant argued that the plaintiff had failed to adequately allege a policy or custom, the court found that a liberal construction of the complaint showed that plaintiff properly pled a policy, custom, or practice of placing cost containment ahead of providing necessary medical care. Id. at *2.

Applying these principles to the present case, I find that the complaint pleads—albeit tenuously—an adequate Monell claim against Corizon. Plaintiff alleges that Corizon has consistently maintained a policy of encouraging the cost-savings and bonus-driven actions of the medical defendants and has pursued higher profits "at the expense of the health, safety and well being" of inmates at Graterford. Sec. Am. Compl. ¶¶ 27–28. Corizon purportedly implements this policy by encouraging, through financial bonuses, the medical defendants' denial of access to out-of-prison health care providers and failure to provide prompt and adequate treatment for inmates serving life sentences with chronic illnesses in order to hasten their deaths and save money. Id. ¶¶ 67, 81. Plaintiff establishes causation by explaining that despite his repeated complaints of multiple symptoms consistent with kidney cancer and despite being on a

medication regimen known to cause kidney cancer, the medical defendants failed to order simple microalbumin tests, perform radiographic testing or promptly refer plaintiff to out-of-prison health care providers.  Id. ¶¶ 59, 67, 77, 87.  Unlike the plaintiff in Winslow, plaintiff here does not register a complaint with the type of treatment he received.  Rather, more consistently with the plaintiffs in Stewart and Giamboi, plaintiff disputes the failure to provide any diagnostic or effective treatment despite objective medical warnings of a serious condition, resulting in an unnecessary spread of cancer in his body.  Id. ¶¶ 88. 91, 99. These Count II allegations, while sparse, are sufficient to survive a motion to dismiss under the standard defined in Twombly and Iqbal.[9]

Going forward, however, plaintiff will not be allowed to rely on generalized allegations that the delays in his medical treatment resulted from an amorphous policy or custom promulgated by Corizon to save money and hasten the deaths of life inmates with terminal illnesses.  Rather, plaintiff will have to present evidence that defines precisely what policies, customs or procedures were in place to encourage the prison doctors to deny necessary medical treatment to inmates, and that shows how that policy operated in his particular case.  At this early juncture of the litigation, however, I will permit this claim to proceed past the Rule 12(b)(6) stage.

---

[9]     Defendants cite to Bello v. Romeo, 424 F. App'x 130 (3d Cir. 2011) and contend that it "strongly support[s] the granting of the motion to dismiss the Monell claim against Corizon. Defs.' Mot. Dismiss, ECF No. 72, at p. 34.  Several problems exist with this argument.  First, the issue on appeal in  that case involved only the Eighth Amendment claim against an individual doctor, not a Monell claim.  Second, the case was decided by the lower court on summary judgment, not on a motion to dismiss.  Finally, the Court of Appeals explicitly recognized that an allegation that a defendant prison doctor intentionally refused to provide care due to cost may be "sufficient to survive [defendants'] motion to dismiss, [but] it alone is not sufficient to defeat a motion for summary judgment."  Id. at 133.

**III.     Claim for Negligence Against Corizon (Count IV)**

Count IV of the second amended complaint alleges a state law claim of negligence against Corizon.  Specifically, plaintiff avers that the medical defendants had a duty to comply with generally accepted standards of care in their medical evaluations and treatment of plaintiff.  Sec. Am. Compl. ¶ 120.  He goes on to assert that by callously examining and treating plaintiff, the medical defendants violated their duty of care to plaintiff, resulting in the growth and spread of his cancer.  Id. ¶¶ 121–22.  In turn, because the medical defendants were acting with the scope of their employment with and under the direct control and supervision of Corizon, Corizon is liable under both a respondeat superior theory and a corporate negligence theory.  Id. ¶ 123.

To the extent plaintiff alleges a respondeat superior theory of liability against Corizon, I have previously dismissed this claim with prejudice.  Specifically, in my prior opinion on the motion to dismiss plaintiff's amended complaint, I noted Pennsylvania's requirement that claims of professional negligence be accompanied by the filing of a certificate of merit under Pa. R. Civ. P. 1042.3(a).  See Memorandum, ECF No. 62, at p. 20.  I further remarked that recovery against an employer for an employee's professional negligence recovery requires that certificates be filed as to each professional defendant for whose behavior a corporate defendant allegedly bears vicarious liability.  Id., citing Rostock v. Anzalone, 904 A.2d 943, 946 (Pa. Super. Ct. 2006) and Stroud v. Abington Mem. Hosp., 546 F. Supp. 2d 238, 248 (E.D. Pa. 2000).  As plaintiff failed to timely file these certificates for any of the medical defendants, I determined that both the medical malpractice claims against them and negligence claim against Corizon must fail.  Based on my prior ruling, I now hold that, insofar as Count IV attempts to plead a claim of vicarious liability against Corizon based on the professional negligence of the individual medical defendants, this claim must be dismissed.

To the extent plaintiff pleads a corporate negligence claim against Corizon, however, it survives a motion to dismiss.  In Thompson v. Nason Hospital, 591 A.2d 703 (Pa. 1991), the Pennsylvania Supreme Court explained that corporate negligence is "a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital."  Id. at 707.  The doctrine thus permits an injured party to bring a suit against a hospital directly for negligence, rather than forcing the injured party "to rely on and establish the negligence of a third party."  Id.  Under a corporate negligence theory, a hospital could be held liable to a patient if the hospital breached one of the following:  (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients. Id.  To be held liable for negligence, a plaintiff must show that the hospital had actual or constructive knowledge of the defect or procedures that created the harm.  Id. at 708. Furthermore, the hospital's negligence must have been a substantial factor in bringing about the harm to the injured party.  Id.

Federal courts within the Third Circuit have found, or predicted, that Pennsylvania's appellate courts would extend liability to corporate providers of medical care to prison inmates. See, e.g., Law v. Correctional Care, Inc., No. 13-2407, 2014 WL 1767129, at *6 (M.D. Pa. May 2, 2014), citing Giamboi v. Prison Health Servs., Inc., No. 11-00159, 2011 WL 5322769, at *15 (M.D. Pa. June 2, 2011) ("Since they are incarcerated, inmates can not provide for their own medical care.  Rather, they must accept the care provided to them . . . . It is a reasonable inference that PHS and PHS Correctional provide comprehensive health care to inmates. Thus,

PHS and PHS Correctional may be liable under a theory of corporate negligence."); Wheeler v. Prison Health Servs., Inc., No. 09–410, 2010 WL 3489405, at *7 (E.D. Pa. Sept. 1, 2010) (predicting the Pennsylvania Supreme Court would extend corporate negligence to a company that is responsible for inmate health care); Zheng v. Palakovich, No. 09-1028, 2010 WL 1508521, at *7 (M.D. Pa. Apr. 13, 2010) (predicting that if the Pennsylvania Supreme Court were to address the issue it would hold that companies such as MHM Correctional Services, Inc., a private company providing mental health services to inmates at SCI–Smithfield, can be held liable for corporate negligence); Fox v. Horn, No. 98–5279, 2000 WL 49374, at *8 (E.D. Pa. Jan. 21, 2000) (same).

Contrary to defendants' argument, the Second Amended Complaint has adequately pled duty, breach and causation.  According to that complaint, Corizon was responsible for provision of healthcare to inmates such as plaintiff under a contract with the Commonwealth.  Sec. Am. Compl. ¶ 34.  Plaintiff further asserts that Corizon (1) was "directly responsible for recruiting and hiring its employees at SCI-Graterford" but failed to properly investigate their education background, past work history and professional reputations, id. ¶¶ 19–20; (2) took no responsibility for the culture of medical malpractice, corporate negligence and deliberate indifference in the provision of health care services to  prisoners despite repeated lawsuits, id. ¶ 23; (3) encouraged/acquiesced in the cost-saving and bonus-driven actions of the medical defendants that resulted in deficient medical care, resulting in injuries to plaintiff and thousands of other inmates at SCI-Graterford, id. ¶¶ 27–29; and (3) promoted a custom and policy of failing to provide prompt and adequate treatment for life-term inmates with chronic illnesses.  Id. ¶ 81. According to plaintiff, these various breaches were the direct and proximate cause of the spread

of plaintiff's kidney cancer.  Id. ¶ 122.  Such allegations are sufficient to  plead a plausible cause of action for corporate negligence.

In an effort to defeat this claim, defendants argue that, under Pennsylvania law, "when  a defendant challenges a complaint by preliminary objections based on lack of duty[,] plaintiff ha[s] to produce sufficient evidence to establish that a duty existed."  Defs.' Mot. Dismiss, ECF No. 72, at p. 37, citing Seebold v. Prison Health Servs., Inc., 57 A.3d 1232 (Pa. 2012).  They go on to contend that the Pennsylvania Supreme Court has required a plaintiff to produce evidence of that duty at the beginning of the proceedings.  Because plaintiff in this case has failed to do so, defendants now claim that the corporate negligence count must be dismissed.

Defendants misread Seebold.  The Pennsylvania Supreme Court in that case did not require that the plaintiff produce evidence of the prison's duty towards the inmate where the inmate alleged a breach of one of the duties enumerated in Thompson.  Rather, it remarked that that the plaintiff had sought to impose a "new, affirmative, common-law duty in tort on the part of physicians to undertake third-party interventions in a prison setting."  Id. at 662.  The court stated that "[i]n the absence of policy arguments or a request for an opportunity to develop a record, the court did not err in applying the default approach of declining to impose upon professional undertakings new affirmative common-law duties running to third-parties to the professional relationship."  Id.  By contrast in this case, plaintiff is not asking for the creation of a new affirmative duty for which the court would need to engage in a social policy assessment, but rather is relying on the well-established duties running from a prison health care provider directly to an inmate.  Under the federal standards of Rule 12(b)(6), such allegations are sufficient to sustain a corporate negligence cause of action.

In short, I find that plaintiff has sufficiently pled his corporate negligence claim.  I will therefore deny the motion to dismiss this ground.

## IV.   Claim for Intentional Infliction of Emotional Distress Against All Defendants (Count V)

In Count V of the second amended complaint, plaintiff alleges that defendants' repeated failures to treat plaintiff's kidney cancer served no penological purpose and were "grossly reckless and beyond the bounds of conduct tolerated in a civilized society."  Sec. Am. Compl. ¶¶ 126–27.  Defendants now contend that this claim fails as a matter of law because plaintiff has not pled either outrageous conduct by defendants or physical injury related to the emotional distress. Defendants' argument is meritless.

While the Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress, the Pennsylvania Superior Court has recognized the cause of action and has held that, "in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff."  Reedy v. Evanson, 615 F.3d 197, 231– 232 (3d Cir. 2010), quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005).  Under Pennsylvania law, to state an intentional infliction of emotional distress claim, the defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id.   In addition, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct."  Reedy, 615 F.3d at 231, quoting Swisher, 868 A.2d at 1230.

Taking the allegations of the second amended complaint in the light most favorable to plaintiff, I decline to dismiss this claim.  As set forth in detail above, plaintiff has alleged that

defendants knew that he had kidney cancer, but deliberately failed to either disclose this fact or refer him for outside care due both to financial considerations and to an unofficial policy to not treat life inmates with chronic illnesses.  If true, such allegations could rise to the level of outrageous, going beyond all possible bounds of decency.  See, e.g., Rodriguez v. Smith, No. 03-3675, 2005 WL 1484591, at *9 (E.D. Pa. June 21, 2005) (declining to dismiss IIED claim asserting that medical defendants deliberately refused to provide the plaintiff with necessary medical treatment for a brain tumor and verbally abusing him when he sought treatment); Miller v. Hoffman, No. 97-7987, 1999 WL 415397, at *9 (E.D. Pa. June 22, 1999) (holding that deliberate deprivation of necessary medical care by prison doctor may be sufficiently extreme and outrageous to support intentional infliction of emotional distress claim), aff'd, 225 F.3d 649 (3d Cir. 2000).[10]  Moreover, plaintiff has asserted that he suffered emotional distress accompanied by physical injury due to the removal of his right kidney and surgery on his left kidney.  Based on these allegations, plaintiff could plausibly prove facts which entitle him to

---

[10]      Defendants cite a litany of cases where the courts found no outrageous or extreme behavior sufficient to sustain a negligent infliction of emotional distress claim.  These cases, however, are so factually different from the present case that they offer no guidance as to the proper outcome here.  See, e.g., Motheral v. Burkhart, 583 A.2d 1180 (Pa. Super. 1990) (dismissing intentional infliction of emotional distress count where plaintiff alleged that defendant lawyer had made knowingly false accusations to a police officer that the plaintiff had sexually molested his daughter); Jones v. Nissenbaum, Rudolf & Seidner, 368 A.2d 770 (Pa. Super. 1976) (dismissing intentional infliction of emotional distress claim against law firm that repeatedly told plaintiffs that their house was going to be sold and that they should remove their things immediately); Dewalt v. Halter, 7 Pa. D. & C. 4th 645 (1990) (dismissing intentional infliction of emotional distress claim against a tavern and employees for serving a male patron excessive quantities of alcohol and then permitting that male patron to enter the ladies room and rape the plaintiff); Doe v. Dyer-Goode, 566 A.2d 889 (Pa. Super. 1989) (dismissing intentional infliction of emotional distress claim alleging that the defendant physician conducted an unauthorized AIDS test on plaintiff's blood and then falsely notified the plaintiff that he tested positive).

relief against the medical defendants for intentional infliction of emotional distress.  Therefore, I will not dismiss this claim.[11]

## V.        Claim for Conspiracy (Count VI)

Plaintiff's final claim asserts that all defendants, acting under color of state law, conspired to violate plaintiff's constitutional, civil and other rights.  In his most recent brief, plaintiff clarifies that he alleges a conspiracy under 42 U.S.C. § 1985(3) and the failure to prevent a conspiracy under 42 U.S.C. § 1986.  Defendants argue, and I agree, that these causes of action fail to state a claim upon which relief may be granted.

In order to establish a claim for conspiracy under section 1985(3), a plaintiff must show the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006), quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983).  A conspiracy—an agreement to commit an unlawful act—is a necessary element of a claim under section 1985.  Gordon v. Lowell, 95 F.Supp.2d 264, 270 (E.D. Pa. 2000).  "An allegation of conspiracy is insufficient to sustain a cause of action under [section 1985]; it is not enough to use the term 'conspiracy' without setting forth supporting facts that tend to show an unlawful agreement."  Id.  Although section 1985(3) applies to private conspiracies, it "was not intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'"

---

[11]        In his response to the motion to dismiss, plaintiff also contends that he has a claim of negligent infliction of emotional distress.  The second amended complaint contains no such cause of action.

Farber, 440 F.3d at 135, quoting Griffin v. Breckenridge, 403 U.S. 88, 101–02 (1971)).  Thus,

"because section 1985(3) requires 'the intent to deprive of equal protection, or equal privileges

and immunities,' a claimant must allege 'some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action' in order to state a claim."

Farber, 440 F.3d at 135, quoting Griffin, 403 U.S. at 102.  "Civil rights conspiracy claims that

are based only on suspicion and speculation instead of fact do not state a claim."  Jackson v.

Gordon, 145 F. App'x 774, 778 (3d Cir. 2005).  A plaintiff must show that the state actor

defendants "somehow reached an understanding to deny . . . his [or her] rights under § 1983."

Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993), citing Adickes v. S.H. Kress & Co., 398

U.S. 144, 150 (1970).[12]

     The second amended complaint is devoid of factual assertions suggesting the existence of

any conspiracy.  Plaintiff identifies allegations wherein he claims that the medical defendants all

prescribed and refilled medications for him, examined him twice a year, failed to refer him to

out-of-prison medical centers, were motivated by guarantees of financial bonuses and

discriminated against him as an African-American inmates with a life sentence.  Pl.'s Resp.

Opp'n Mot. Dismiss, ECF No. 76, at pp. 26–27.  Even accepting these statements as true,

however, I cannot make any reasonable inference that the defendants had an agreement to act

this way or engaged in a concerted effort to deny plaintiff medical care.  Likewise, plaintiff's

conclusory legal allegation that the defendants acted "in concert and conspiracy with each other"

---

[12]    Defendants argue that, under the intracorporate conspiracy doctrine, Corizon and its employees cannot conspire with each other for purposes of § 1985(3).  It is well established, however, that a corporation can conspire with employees or officers who are acting in their individual capacities.  Robison v. Canterbury Village, Inc., 848 F.2d 424, 431 (3d Cir. 1988).  Moreover, corporate officials can conspire with each other for purposes of § 1985(3).  Bedford v. SEPTA, 867 F. Supp. 288, 295 (E.D. Pa. 1994).  As I dismiss the conspiracy claims on other grounds, I need not discuss this argument further.

is not entitled to any deference.  Iqbal, 556 U.S. at 678.  As this claim does not plead a plausible conspiracy, I grant the motion to dismiss on this ground.

Plaintiff also alleges a claim under 42 U.S.C. § 1986, which provides liability for a person who knows of a potential section 1985 allegation and possesses the power prevent its occurrence.  42 U.S.C. § 1986.  Because liability under section1986 is derivative of section 1985(3), without a violation of section 1985(3) there can be no violation of section 1986.  Koorn v. Lacey Twp., 78 F. App'x 199, 208 (3d Cir. 2003).  Accordingly, this claim is dismissed as well.

**CONCLUSION**

In light of the foregoing discussion, I will grant the motion to dismiss with respect to the Monell claim against Corizon in Count I and the claims under 42 U.S.C. §§ 1985(3) and 1986 in Count VI, but will deny the motion in all other respects.  Taking the allegations of the second amended complaint in the light most favorable to plaintiff and drawing all reasonable inferences in his favor, I find he has adequately set forth both constitutional claims and state law claims against Corizon and the individual medical defendants.

An appropriate Order follows.