IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DAVID ROBINSON,<br><br>                  Plaintiff,<br><br>    v.<br><br>PRISON HEALTH CARE SERVICES, INC.,<br>et al.,<br><br>                  Defendants. | CIVIL ACTION<br>NO. 12-1271 |

## OPINION

**Slomsky, J.**                                                                    **May 29, 2018**

## I.     INTRODUCTION

Plaintiff David Robinson, an inmate at the State Correctional Institute at Graterford ("SCI-Graterford"), brings this counseled action against Corizon Health, Inc. ("Corizon"), prison healthcare providers, and the Commonwealth of Pennsylvania. He alleges violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments, together with several state law tort claims. Defendants are Corizon; Bruce Blatt, M.D.; Raymond Machak, P.A.; Richard Kosierowski, M.D.; Margarita McDonald, M.D.; Richard Stefanic, M.D.; John Zaro, D.O.; Frank Masino, P.A.-C. ("Medical Defendants"); and the Commonwealth of Pennsylvania. Plaintiff's claims relate to Defendants' failure to diagnose and treat his kidney cancer.

In Count I, Plaintiff alleges that the Medical Defendants' treatment of him violated his Eighth and Fourteenth Amendment rights.[1] In Count II, Plaintiff alleges that Corizon had a

---

[1]    Plaintiff also brought Count I against Corizon, Dr. Stefanic, Masino, and the Commonwealth of Pennsylvania. In an Opinion and Order dated December 13, 2016, the Honorable Thomas N. O'Neill of this Court dismissed Corizon from Count I. (Doc. No. 77 at 19-22.) Additionally, despite multiple Orders and years of litigation, Dr. Stefanic, Masino, and the

custom, policy, and practice of deliberate indifference to his medical needs in violation of the Eighth Amendment.[2] In Count IV, Plaintiff alleges corporate negligence against Corizon, and in Count V, he alleges intentional infliction of emotional distress against all Defendants.[3]

Defendants Corizon, Dr. Blatt, Dr. McDonald, Dr. Kosierowski, Dr. Zaro, and P.A. Machak move for summary judgment. (Doc. No. 94.)[4] Plaintiff has filed a Response in which he states that he is unable to respond in good conscience to Defendants' Motion for Summary Judgment because any response would be without factual basis or merit. (Doc. No. 112.) For reasons that follow, the Court will grant the Motion for Summary Judgment.

## II.   BACKGROUND

### A.   Factual Background[5]

Since 1975, Plaintiff David Robinson has been incarcerated at SCI-Graterford. (Doc. No. 95 ¶ 59.) He is serving a life sentence. As noted, Plaintiff's claims center on Corizon and the Medical Defendants' failure to detect and treat his kidney cancer.

#### 1.   Plaintiff's Medical History and Care

As an inmate at SCI-Graterford, Plaintiff received medical treatment through the Chronic Care Clinics ("CCC") run by Corizon. (Doc. No. 64 ¶¶ 31, 34.) In 2000, Plaintiff saw Dr.

---

Commonwealth of Pennsylvania have not been properly served. As discussed below, these Defendants will be dismissed as Defendants with prejudice for failure to prosecute.

[2]  In Count III, Plaintiff alleges a claim of state-created danger against the Commonwealth of Pennsylvania. However, as noted, this party will be dismissed for failure to prosecute.

[3]  In Count VI, Plaintiff alleged a claim against all Defendants for conspiring under color of state law to violate his constitutional, civil, or other rights. Judge O'Neill dismissed this Count for failure to state a claim. (Doc. No. 77 at 35-37.)

[4]  Unless otherwise noted, document numbers refer to Civil Action Number 12-1271, the docket number of the instant consolidated case.

[5]  The following facts are taken from Defendants' Statement of Uncontested Facts and Exhibits filed by Defendants. (Doc. Nos. 94-2 to 94-11; 95.)

Kosierowski and was told that he had high blood pressure after suffering from a nosebleed. (Doc. No. 94-4 at 53:13-54:13.) From that point on, Plaintiff was prescribed medication for high blood pressure. (Id. at 54:10-13.)

Throughout the next approximately eleven years, Plaintiff was seen by various medical providers at SCI-Graterford for high blood pressure and other issues. In his deposition, Plaintiff testified that around 2006, he asked Dr. Kosierowski if his blood pressure medicines could cause cancer, but that Dr. Kosierowski did not answer him. (Doc. No. 94-4 at 59:22-60:2.) Plaintiff did not speak to any other doctor, including Drs. Blatt, McDonald, and Zaro and P.A. Machak, about whether the medicine he took caused cancer. (Id. at 60:6-21.)

On March 15, 2006, Plaintiff again was seen in the CCC for hypertension. (Id. ¶ 11.) On Plaintiff's medical chart from that day is the following notation: "UA: Trace protein Micro Albumin [sic] 5.2 Hi." (Id.) Plaintiff alleges that when the kidneys are damaged, small amounts of albumin leak into the urine, a condition known as microalbuminuria. (Doc. No. 64 ¶ 52.) This condition can be caused by high blood pressure, and if not treated can lead to kidney disease. (Id. ¶ 53.) Almost one month later, because of the protein that had been seen in Plaintiff's urine analysis, Dr. Zaro added ACE inhibitors for renal protection. (Doc. No. 95 ¶ 14.) He was seen two more times in 2006. (Id. ¶¶ 15, 16.)

On February 27, 2007, a doctor ordered Plaintiff to receive the medications Mevacor, HCTZ, Prinivel, ASA, and Elavil. (Id. ¶ 19.) About two weeks later, he was seen for hard stools and blood in his stool. (Id. ¶ 20.) On August 14, 2007, when P.A. Korszniak examined Plaintiff, his blood pressure was 128/66. (Id. ¶ 21.) From 2007 to 2009, the Mevacor, HCTZ, Prinivel, ASA, and Elavil medications were renewed. (See id. ¶¶ 22, 25-27, 32, 35-36.) Throughout that

period of time, Plaintiff was seen periodically by the medical professionals, and his blood pressure fluctuated.  (See id. ¶¶ 24, 37, 88.)

In 2009 and 2010, Plaintiff was seen at times for annual exams, hypertension, and high blood pressure, which continued to fluctuate.  (See id. ¶¶ 37, 39, 41, 42, 47, 49.)  In those years, Plaintiff continued to smoke cigarettes but reported no shortness of breath, chest pain, headaches, or dizziness.  (See id. ¶¶ 37, 49.)  On August 24, 2009, Dr. Zaro decreased his dose of HCTZ medicine, added the medication Norvasc, ordered him to have his blood pressure checked twice weekly for three weeks, and told him to stop smoking.  (Id. ¶ 37.)  On December 14, 2009, Dr. McDonald ordered that Plaintiff have his blood pressure checked twice weekly for four weeks.  (Id. ¶ 41.)  Just over a month later, his HCTZ and Elavil doses were increased.  (Id. ¶ 43.)

On February 3, 2010, P.A. Machak ordered laboratory studies and renewed Plaintiff's blood pressure medications.  (Id. ¶ 45.)  On August 18, 2010, Plaintiff complained to Dr. McDonald that he had not received his HCTZ since May 2010.  (Id. ¶ 47.)  Dr. McDonald discontinued the Mevacor, restarted the HCTZ, and ordered blood pressure checks twice weekly for four weeks.  (Id.)  She also ordered Prinivel, ASA, increased Elavil, and Norvasc, as well as laboratory studies.  (Id. ¶ 48.)  On September 23, 2010, Plaintiff's Norvasc dosage was increased.  (Id. ¶ 49.)  Plaintiff was examined in January and February 2011.  (Id. ¶¶ 50, 51.)  In February 2011, Plaintiff complained of blood in his urine.  (Id. ¶¶ 77, 78.)  Dr. Kosierowski told Plaintiff that it would clear in a couple of days, and in three days, it did.  (Id. ¶ 79.)

On March 9, 2011, Plaintiff was examined by Dr. Stefanic, after complaining about diffuse abdominal pain for three days.  (Id. ¶ 52.)  Dr. Stefanic examined Plaintiff's stomach and believed that he had possible constipation.  (Id.)  He gave Plaintiff a laxative and told him to return that evening if no improvement occurred.  (Id.)  The same day, a different doctor saw

Plaintiff for abdominal pain. (Id. ¶ 53.) Plaintiff reported vomiting the previous night, and his last bowel movement was on March 7, 2011. (Id.) Plaintiff was transferred to the emergency room for possible acute bowel obstruction. (Id.)

Two days later, Plaintiff returned from the hospital with a diagnosis of possible kidney cancer, and three days after, he was diagnosed with kidney cancer and transferred to SCI-Pittsburgh. (Id. ¶¶ 54, 55.) On May 21, 2011, he underwent a right nephrectomy, which is the surgical removal of his right kidney. (Id. ¶ 56.) Then, on September 27, 2011, a portion of his left kidney was removed. (Id. ¶ 57.) In his deposition, Plaintiff testified that none of his family members had kidney cancer. (Id. ¶ 61.) He never asked his surgeon how people get kidney cancer. (Id. ¶ 110.) Plaintiff believes, however, that the different blood pressure medicine he was prescribed caused him to develop kidney cancer. (Id. ¶ 92.)

The cancer physician who saw Plaintiff in 2011 did not state whether he had cancer in 2006, and Plaintiff does not know if Dr. Kosierowski knew in 2006 whether Plaintiff had cancer when he spoke to him about the condition. (Id. ¶¶ 93, 94.) Further, no medical professional ever told Plaintiff that his cancer could be traced to 2006. (Id. ¶ 95.) He has no evidence that Drs. Kosierowski, McDonald, and Zaro, or P.A. Machak knew in 2006 that he had cancer. (Id. ¶¶ 97-100.)

### 2. Plaintiff Did Not Exhaust the Grievance Process

The Commonwealth of Pennsylvania Department of Corrections ("DOC") policy DC-ADM 804 applies to every inmate and establishes the procedures for the review of inmate grievances. (Doc. No. 94-11.) The policy outlines a three-step system for handling inmate grievances. First, initial grievances must be submitted to the Facility Grievance Coordinator using the DC-ADM 804, Part 1 Form. (Id., Part IV.A.6.) The policy provides:

7. The inmate will include a statement of the facts relevant to the claim. The text of the grievance **must** be legible, ***understandable, and*** presented in a courteous manner . . . . The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance. . . .

8. The inmate must submit a grievance for initial review to the Facility Grievance Coordinator within 15 working days after the event upon which the claim is based.

\* \* \*

14. The inmate must sign and date the grievance or appeal.

(Id., Part IV.A.7-8, 14 (emphasis in original).)  A Grievance Officer will provide to the inmate an Initial Review decision within ten days of receipt of the grievance.  (Id., Part IV.B.)

Second, "[a]n inmate may appeal an Initial Review decision . . . to the Facility Manager in writing, within ***10*** working days from the date of the Initial Review decision . . . ."  (Id., Part IV.C.1.b (emphasis in original).)  Third,

[a]ny inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within ***15*** working days ***from the date of the Facility Manager's/ designee decision***.  Only issues appealed to the Facility Manager may be appealed at this level.

(Id., Part IV.D.1.b (emphasis in original).)  Finally, "The Secretary's Office of Inmate Grievances and Appeals will issue a decision within 30 working days after receipt of an appeal."  (Id., Part IV.D.2.f.)  In his deposition, Plaintiff testified that he understood what a grievance is, that he knew that he must complete the administrative process, that he must continue appealing a grievance until it reaches the Bureau of Health, and that he is supposed to file a grievance if he is not receiving medical care.  (Doc. No. 95 ¶¶ 72-75.)  From 2004 to 2011, Plaintiff never filed a grievance about medical issues involving blood pressure medicine or treatment or his kidneys.  (Id. ¶ 122.)

Although Plaintiff filed several grievances while at SCI-Graterford, only one grievance went to the third step for final review.  That grievance did not concern Plaintiff's kidney cancer.

On March 30, 2011, fellow inmate Thomas Robinson submitted Grievance #359762 on behalf of Plaintiff, stating that Plaintiff had given him power of attorney to do so. (Doc. No. 96-1 at 8.) The grievance recounted Plaintiff's treatment and described his symptoms of kidney cancer. (Id. at 6.) It further alleged that prison medical staff were supposed to give him either a CT or an MRI but "refused to do so to save cost." (Id.) The grievance stated that approximately two weeks prior to its filing, Plaintiff was taken to an off-site medical facility where he was informed for the first time that he had cancer of both kidneys. (Id. at 7.) Finally, it states that he was transferred to another facility because no hospital in the area would perform the surgery since the DOC has problems paying its bills and because the hospitals do not want to be liable for its denial of prompt and proper medical care. (Id. at 3.)

On March 31, 2011, Grievance #359762 was rejected because it was not signed and dated by Plaintiff in accordance with DC-ADM 804. (Id. at 5.) On April 13, 2011, Thomas Robinson sent a letter on behalf of Plaintiff asking the status of the grievance. (Id. at 4.) The next day, Grievance Officer Wendy Shaylor responded that the grievance was rejected because Robinson was not permitted to file a grievance on Plaintiff's behalf. (Id.) On May 11, 2011, Plaintiff attempted to resubmit Grievance #359762, this time with his signature. (Id. at 2.) The grievance was rejected because it was not filed within fifteen working days after the events upon which the claims were based in accordance with DC-ADM 804. (Id. at 1.) Plaintiff did not appeal that decision to the Secretary's Office as required by DC-ADM 804. (Doc. No. 95 ¶¶ 6, 128-29.)

In his deposition, Plaintiff reiterated his allegation that medical staff were supposed to give him either a CT or an MRI, but that they refused to do so because of cost, which was something that his friend, Thomas Robinson, had raised in the prison grievance. (Id. ¶ 81.) No one told Plaintiff about the need for a CT or MRI. (Id.) And he stated that he did not have any

information regarding his allegation that the DOC could not pay its bills. (Id. ¶ 82.) Plaintiff does not believe that he was discriminated against because of his race or because of his life sentence and in fact does not know if Drs. Kosierowski, Blatt, and Zaro were aware he was serving a life sentence. (Id. ¶¶ 101, 103.) Further, he has no information to support the claim that Defendants wanted to hasten his death because of his life sentence. (Id. ¶ 107.) Plaintiff also stated that his allegation that Defendants did not treat him, take steps to prevent his cancer, or send him out to receive treatment because of financial bonuses was based on the case of a fellow inmate, Noah Carter. (Id. ¶ 104.) He testified that he did not know what happened in Carter's case and has no other information regarding financial bonuses. (Id. ¶¶ 105-06.)

Grievance #524671, dated August 22, 2014, is the only grievance Plaintiff filed that went for final review. (Id. ¶ 2.) It does not relate to Plaintiff's kidney cancer but instead asserts that his medical records were being disclosed to the former Medical Director of the DOC, and at least three other people. (Doc. No. 94-2 at 7-8.) On September 12, 2014, the Corrections Health Care Administrator denied the grievance, explaining that to the best of his knowledge, Plaintiff's medical records had not been released unless a release had been signed by the patient. (Id. at 6.) Plaintiff appealed the grievance. (Id. at 4.) The prison superintendent upheld the prison's initial response because Plaintiff had provided no evidence of his records being released. (Id. at 3.) Plaintiff appealed. (Doc. No. 95 ¶ 2(E).) His appeal was denied. (Doc. No. 94-2 at 1.)

**B.    Procedural History**

On December 14, 2010, Plaintiff filed a pro se Complaint under Civil Action Number 10-7165 against Prison Health Services (now Corizon), the Commonwealth of Pennsylvania, medical personnel, and individual state defendants. (Civ. A. No. 10-7165, Doc. No. 3.) On March 29, 2012, he filed another case under Civil Action Number 12-1271 against Corizon and

the Medical Defendants.  (Doc. No. 5.)  On February 28, 2013, he retained counsel, and on May 23, 2013, the Honorable Thomas N. O'Neill of this Court consolidated the cases.  (Doc. No. 43.)

Plaintiff filed an Amended Complaint.  (Civ. A. No. 10-7165, Doc. No. 45.)  Judge O'Neill granted Defendants' Motion to Dismiss with leave to file a Second Amended Complaint ("SAC") for certain claims.  (Doc. Nos. 62, 63.)  On April 18, 2016, Plaintiff filed a SAC alleging violations of his constitutional and civil rights by Corizon and the Medical Defendants (Count I); custom, policy, and practice of deliberate indifference by Corizon (Count II); state-created danger by the Commonwealth of Pennsylvania (Count III); negligence against Corizon (Count IV); intentional infliction of emotional distress against all Defendants (Count V); and conspiracy by all Defendants to violate Plaintiff's constitutional rights (Count VI).  On December 13, 2016, Judge O'Neill dismissed Count I against Corizon and Count VI against all moving Defendants.  (Doc. No. 78.)

The parties proceeded to discovery.  On October 3, 2017, the case was reassigned to this Court for all further proceedings.  (Doc. No. 92.)  Thereafter, on October 23, 2017, Defendants Corizon, Drs. Blatt, McDonald, Kosierowski, and Zaro, and P.A. Machak filed a Motion for Summary Judgment.  (Doc. No. 94.)  On May 3, 2018, Plaintiff filed a Response to Defendants' Motion for Summary Judgment in which he states as follows:

> Plaintiff's counsel, after a thorough review of Defendants motion for summary judgment, has decided that we are unable to respond, in good conscience, to the motion for summary judgment before this Honorable Court. Any such response would be without factual basis or merit.

(Doc. No. 112.)  Thus, Plaintiff does not oppose Defendants' Motion for Summary Judgment.[6]

---

[6]   In reaching a decision, the Court has considered the Second Amended Complaint (Doc. No. 64); Defendants' Motion for Summary Judgment (Doc. No. 94); Defendants' Statement of Uncontested Facts (Doc. No. 95); the Praecipe to Add Exhibit "B", Part 2 to the Previously Filed Motion for Summary Judgment (Doc. No. 96); the October 31, 2017 pro se letter from

## III.    STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case."  Favata, 511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247–249.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court

---

Plaintiff (Doc. No. 97-1); Defendants' requests that the Motion for Summary Judgment be granted as unopposed (Doc. Nos. 105, 107); and Plaintiff's Response (Doc. No. 112).

must credit the nonmoving party's evidence over that presented by the moving party.  <u>Id.</u> at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  <u>Id.</u> at 250.

## IV.    ANALYSIS

The SAC raises claims pursuant to 42 U.S.C. § 1983 as well as state law claims.  Defendants argue that summary judgment should be granted on the § 1983 claims alleged in Counts I and II because Plaintiff has failed to exhaust his administrative remedies.  (Doc. No. 94 at 12.)  They also submit that if the Court grants summary judgment on Counts I and II, it should decline to exercise supplemental jurisdiction over the state law claims alleged in Counts V and VI.  (<u>Id.</u> at 33.)  For reasons that follow, the Court will grant the Motion for Summary Judgment.

### A.    Plaintiff Has Failed to Exhaust His Administrative Remedies with Respect to His Claims in Counts I and II

In Count I, Plaintiff argues that the Medical Defendants acted with knowing, intentional, willful, malicious, wanton, gross negligence, recklessness, and deliberate indifference by failing to provide adequate and prompt medical responses to his serious medical needs "due to their habitual failures and their participation in cost saving and bonus driven schemes" in violation of the Eighth and Fourteenth Amendments.  (Doc. No. 64 ¶ 105(d).)  In Count II, he alleges that Corizon had "a custom, policy and practice of willful silence and willful subjection of Plaintiff to the day-to-day incompetent, negligent, and deliberately indifferent medical treatment" amounting to cruel and unusual punishment.  (<u>Id.</u> ¶ 110.)  Defendants submit that they are entitled to summary judgment on these Counts because Plaintiff has failed to exhaust his administrative remedies.  (Doc. No. 94 at 12.)  Plaintiff does not dispute Defendants' Motion.  (Doc. No. 112.)

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that a prisoner must exhaust all administrative remedies before bringing a suit under 42 U.S.C. § 1983 or another federal law. The statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

§ 1997e(a). Exhaustion is mandatory. Woodford v. Ngo, 548 U.S. 81, 85 (2006). "Failure to exhaust is an affirmative defense that the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Paladino v. Newsome, 885 F.3d 203, 207 (3d Cir. 2018) (quoting Small v. Camden County, 728 F.3d 265, 268 (3d Cir. 2013)).

Under the PLRA, exhaustion of administrative remedies means "proper exhaustion." Woodford, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, the requirement of proper exhaustion is not satisfied when grievances are dismissed because the inmate missed the deadline set by the grievance policy. Id. at 93-95. Instead, the inmate must "complete the administrative review process in accordance with the applicable procedural rules." Id. at 88. This exhaustion requirement "applies to a grievance procedure described in an inmate handbook but not formally adopted by a state administrative agency." Paladino, 885 F.3d at 207 (quoting Concepcion v. Morton, 306 F.3d 1347, 1348-49 (3d Cir. 2002)).

Here, it is undisputed that Plaintiff did not exhaust his administrative remedies with respect to his claims in Counts I and II, which center on the Medical Defendants' and Corizon's failure to properly treat his kidney cancer. As noted, fellow inmate Thomas Robinson submitted Grievance #359762 on Plaintiff's behalf. (Doc. No. 96-1 at 8.) The grievance recounted his

treatment and described his kidney cancer symptoms.  (Id. at 6.)  It stated that symptoms for kidney cancer were present and that the prison staff were supposed to give him a CT or MRI but "refused to do so to save cost."  (Id.)  It further described the medical providers' and prison's pattern and practice of waiting to the last minute to treat serious medical needs and stated that Plaintiff was transferred to another facility for treatment because no hospital in the area would treat him due to the prison's problems paying bills.  (Id. at 6-7.)

Pursuant to DC-ADM 804, the grievance was rejected because it was not signed and dated by Plaintiff.  (Id. at 5.)  When Plaintiff attempted to resubmit the grievance with his signature, it was rejected because it was not filed within fifteen working days after the events upon which the claims were based as required by DC-ADM 804.  (Id. at 1-2.)  This was the only grievance Plaintiff filed concerning his medical treatment relating to kidney cancer, and Plaintiff did not appeal the grievance decision.  (Doc. No. 95 ¶¶ 6, 128-29.)

Before bringing suit under 42 U.S.C. § 1983, Plaintiff was required to exhaust his administrative remedies in accordance with DC-ADM 804. See Paladino, 885 F.3d at 207.  By first failing to sign the grievance and then by failing to timely resubmit the grievance, Plaintiff failed to comply with the DOC's "deadlines and other critical procedural rules."  Woodford, 548 U.S. at 90-91.  As such, Plaintiff's untimely grievance did not satisfy proper exhaustion of administrative remedies.  See id. at 94-95 (holding that an untimely grievance or appeal does not satisfy exhaustion requirement).

Moreover, Plaintiff did not take full advantage of available administrative procedures by appealing the DOC's rejection of his grievance.  See Booth v. Churner, 206 F.3d 289, 299 (3d Cir. 2000) (explaining that inmate "did not take full advantage of the administrative procedure available to him" by failing to appeal the grievance at steps two and three of DC-ADM 804).

Because Plaintiff failed to comply with DC-ADM 804 procedural rules and failed to appeal the decision rejecting his grievance, he has failed to exhaust administrative remedies, and the Motion for Summary Judgment (Doc. No. 94) will be granted on Counts I and II.[7]

### B. The Court Will Decline to Exercise Supplemental Jurisdiction over the State Law Claims for Corporate Negligence and Intentional Infliction of Emotional Distress Alleged in Counts IV and V

In Count IV, Plaintiff alleges a state law claim of corporate negligence against Corizon with respect to its treatment of Plaintiff. (Doc. No. 64 at 33-34.) In Count V, he alleges a state law claim for intentional infliction of emotional distress against all Defendants for their grossly reckless conduct in failing to properly treat his kidney cancer. (Id. at 34-35.) Defendants submit that if the Court dismisses the federal claims, it should decline to exercise supplemental jurisdiction over the remaining state law claims. (Doc. No. 94 at 33.) Again, Plaintiff does not oppose Defendants' position. (Doc. No. 112.)

Supplemental jurisdiction over state law claims in federal court is governed by 28 U.S.C. § 1367. Section 1367 provides in relevant part that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

§ 1367(a). In Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009), the Third Circuit explained:

> The statute also permits a district court to decline the exercise of supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); see New Rock Asset Partners v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1507 n.11 (3d Cir. 1996). The decision to retain or decline jurisdiction over state-law claims is discretionary. Annulli v. Panikkar, 200 F.3d 189, 203 (3d Cir. 1999), overruled on

---

[7] Defendants also argue that summary judgment should be granted on Counts I and II because Plaintiff has not established sufficient evidence to prove his claims. (Doc. No. 94 at 18, 20, 28, 31.) But because it is undisputed that Plaintiff has not exhausted his administrative remedies on these Counts, the Court need not decide whether sufficient evidence supports them.

other grounds by <u>Rotella v. Wood</u>, 528 U.S. 549, 120 S. Ct. 1075, 145 L.Ed.2d
1047 (2000).  That discretion, however, is not unbridled. Rather, the decision
"should be based on considerations of 'judicial economy, convenience and
fairness to the litigants.'"  <u>New Rock</u>, 101 F.3d at 1505 (quoting <u>United Mine
Workers v. Gibbs</u>, 383 U.S. 715, 726–27, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966)).
If a district court decides not to exercise supplemental jurisdiction and therefore
dismisses state-law claims, it should do so without prejudice, as there has been no
adjudication on the merits.  <u>See</u> <u>Figueroa</u>, 188 F.3d at 182.

<u>Kach</u>, 589 F.3d at 650 (alteration in original) (footnote omitted).  A court "<u>must</u> decline to decide

the pendant state law claims unless considerations of judicial economy, convenience, and

fairness to the parties provide an affirmative justification for doing so."  <u>Hedges v. Musco</u>, 204

F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (quoting <u>Borough of West Mifflin v.

Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, because summary judgment will be granted on the constitutional claims alleged in

Counts I and II, the Court will decline to exercise supplemental jurisdiction over the state law

claims.  <u>See</u> <u>Byrd v. Shannon</u>, 715 F.3d 117, 128 (3d Cir. 2013) (affirming district court's

decision to decline supplemental jurisdiction over state law negligence claims after granting

summary judgment on constitutional claims).  Judicial economy, convenience, and fairness all

weigh against retaining supplemental jurisdiction and in favor of dismissal.  Although this action

was filed in 2012, Plaintiff may file his state law claims in state court because the statute of

limitations for them has been tolled while this action is pending.  <u>See</u> <u>Artis v. District of

Columbia</u>, 138 S. Ct. 594, 601-03 (2018) (holding that statute of limitations for any state law

claim joined under 28 U.S.C. § 1367 with claims in a federal suit is tolled, or held in abeyance,

while the federal action is pending and for a period of thirty days after dismissal of the action

unless state law provides for a longer period). Thus, the negligence and intentional infliction of emotional distress claims alleged in Counts IV and V will be dismissed without prejudice.[8]

### C. Defendants Dr. Stefanic, Masino, and the Commonwealth of Pennsylvania Will Be Dismissed for Failure to Prosecute

Federal Rule of Civil Procedure 41(b) allows a district court to dismiss a case for failure to prosecute, stating: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); Briscoe v. Klause, 538 F.3d 252, 258 (3d Cir. 2008). Dismissals under Rule 41(b) are within the discretion of the district court and will not be disturbed absent abuse of discretion. Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002). A court also may dismiss a suit sua sponte for failure to prosecute pursuant to its inherent powers and Rule 41(b). Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962).

In deciding whether to dismiss an action due to a plaintiff's failure to prosecute, the court must consider six factors set forth in Poulis v. State Farm Fire & Casualty Co.:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

Briscoe, 538 F.3d at 258 (quoting Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original)). Courts in the Third Circuit are required to consider these factors because "dismissal with prejudice is, undeniably, a drastic sanction." In re Asbestos Prods. Liab. Litig. (No. VI), 718 F.3d 236, 246 (3d Cir. 2013). In balancing the Poulis factors,

---

[8]  Defendants also argue that even if the Court exercised supplemental jurisdiction over these claims, they would be entitled to summary judgment because Plaintiff has failed to produce sufficient evidence to support them. (Doc. No. 94 at 36-40.) Because the Court has declined to exercise supplemental jurisdiction, it also need not discuss the merits of the state law claims.

however, there is no "magic formula," "no single <u>Poulis</u> factor is dispositive," and all six factors need not be satisfied in order to dismiss a complaint. <u>Briscoe</u>, 538 F.3d at 263.

Here, Plaintiff commenced this action against Dr. Stefanic on March 29, 2012. (Doc. No. 5.) On December 10, 2012, Plaintiff added Defendants Masino and the Commonwealth of Pennsylvania by including them in his Amended Complaint. (Doc. No. 21.) Plaintiff did not serve process on these Defendants. Then, as noted, on May 23, 2013, this action was consolidated with Civil Action Number 10-7165. (Doc. No. 43.)

On May 4, 2014, Judge O'Neill issued an Order to Show Cause why this case should not be dismissed for failure to serve certain Defendants, including Dr. Stefanic, Masino, and the Commonwealth of Pennsylvania. (Civ. A. No. 10-7165, Doc. No. 51.) Plaintiff did not respond. Then, after Judge O'Neill issued another Order directing Plaintiff to respond to his Order to Show Cause, Plaintiff filed a Response. (Civ. A. No. 10-7165, Doc. No. 59.) He stated that the failure to serve Dr. Stefanic was an oversight and that he would serve him; that although Masino had not been served, other Medical Defendants were liable for his conduct; and that he "will not pursue additional claims against the Commonwealth of Pennsylvania." (<u>Id.</u> at 3.) Thereafter, Plaintiff still failed to serve these Defendants. On January 21, 2015, the case was dismissed without prejudice for lack of prosecution. (Doc. No. 50.) On May 21, 2015, Plaintiff, proceeding pro se, filed a letter requesting that the case be reopened. (Doc. No. 51.) Judge O'Neill issued an Order directing Plaintiff's counsel to respond to the request. (Doc. No. 56.) After Plaintiff's counsel filed a Memorandum in Support of Plaintiff's Motion to Reopen the Complaint (Doc. No. 58), Judge O'Neill granted the request to reopen the case (Doc. No. 61).

Thereafter, Judge O'Neill granted Defendants' Motion to Dismiss with leave to amend for certain claims. (Doc. Nos. 62, 63.) In the Opinion, Judge O'Neill noted that Dr. Stefanic and

Masino had not been served and dismissed them without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for failure to timely serve them. (Doc. No. 62 at 3 n.6) As to the Commonwealth of Pennsylvania, Judge O'Neill stated that Plaintiff had represented that he would not pursue any additional claims against it. (Id. at 1 n.2.) On April 18, 2016, Plaintiff filed his SAC, again including Dr. Stefanic, Masino, and the Commonwealth of Pennsylvania as Defendants. (Doc. No. 64.) To date, none of these Defendants has been served.

Against this backdrop, the Court will examine each Poulis factor to determine whether these three Defendants should be dismissed. On balance, the Poulis factors weigh heavily in favor of dismissing these Defendants. The first Poulis factor asks the Court to analyze the extent of the party's personal responsibility. As to this factor, there is no evidence that Plaintiff bears personal responsibility for the inaction. Instead, the responsibility for the repeated failure to serve Defendants rests with Plaintiff's counsel. See Parks v. Ingersoll-Rand Co., 380 F. App'x 190, 194 (3d Cir. 2010) (stating that the first factor weighed against dismissal where there was no evidence that plaintiff bore personal responsibility for the action or inaction); Poulis, 747 F.2d at 868 (explaining that plaintiff was not responsible for their counsel's conduct, but that this factor is not dispositive). Thus, although not dispositive, the first factor weighs against dismissal.

The second Poulis factor examines the prejudice to the adversary caused by a plaintiff's failure to meet scheduling orders and to respond to discovery. Prejudice to the adversary includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possible irremediable burdens of costs imposed to the opposing party." Adams v. Trs. of N.J. Brewery Empls. Pension Tr. Fund, 29 F.3d 863, 874 (3d Cir. 1994) (quoting Scarborough v. Eubanks, 747 F.2d 871, 876 (3d Cir. 1984)). Plaintiff's failure to serve Dr. Stefanic, Masino, and the Commonwealth of Pennsylvania over the course of six years of

litigation has prejudiced them. Not only has Plaintiff failed to serve these Defendants, but he represented in his Response to the Order to Show Cause that he would not be proceeding against the Commonwealth of Pennsylvania. Nonetheless, he included these three Defendants in his SAC but again failed to serve them, prejudicing their ability to proceed with this litigation. This factor weighs in favor of dismissal.

The third Poulis factor addresses a plaintiff's history of dilatoriness. Plaintiff's counsel has a history of dilatoriness dating back many years and continuing to the present. As noted, he failed to serve these Defendants even after Judge O'Neill directed him to do so. And after Dr. Stefanic and Masino were dismissed without prejudice for failure to serve, Plaintiff's counsel included them in the SAC, still without serving them. He also included the Commonwealth of Pennsylvania in the SAC even though he had represented that he would not be proceeding against this party. Finally, since the case was transferred to this Court, Plaintiff's counsel was given four extensions of time to respond to the Motions for Summary Judgment, only filing a response after the Court held a telephone conference on the record and directed him to do so. Given the history of dilatory conduct, this factor weighs heavily in favor of dismissal.

The fourth Poulis factor asks whether the conduct of a plaintiff was willful or in bad faith. There is no evidence in the record to suggest that Plaintiff has acted willfully or in bad faith. Therefore, this factor weighs against dismissal.

The fifth Poulis factor concerns the effectiveness of sanctions other than dismissal. Here, the only appropriate sanction is dismissal after years of procedural litigation. Plaintiff's counsel has had ample opportunity to serve these Defendants and has not complied with an Order to Show Cause. This case has been dismissed for lack of prosecution and under Rule 4(m). Moreover, based on Plaintiff's Response to the Order to Show Cause, it is evident that he does

not wish to proceed against Masino and the Commonwealth of Pennsylvania, despite naming them in the SAC. Given these circumstances, the Court does not believe that alternative sanctions would compel Plaintiff's counsel to pursue this action. The fifth factor weighs in favor of dismissal.

Finally, the sixth <u>Poulis</u> factor considers the merits of a plaintiff's claims. Using the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6), a claim or defense is meritorious "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." <u>Briscoe</u>, 538 F.3d at 263 (quoting <u>Poulis</u>, 747 F.2d at 869-70). Here, the claims against Dr. Stefanic and Masino, as Medical Defendants, would have survived a motion to dismiss had Judge O'Neill considered these Defendants in his Opinion. By contrast, claims against the Commonwealth of Pennsylvania would have been barred by the Eleventh Amendment. <u>See</u> <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 99-100 (1984) (holding that under the Eleventh Amendment, a nonconsenting state is immune from suit in federal court). Although Eleventh Amendment sovereign immunity is subject to three exceptions, <u>MCI Telecomm. Corp. v. Bell Atl. Pa.</u>, 271 F.3d 491, 503 (3d Cir. 2001), none is applicable here. Accordingly, claims against Dr. Stefanic and Masino likely would have had merit, while claims against the Commonwealth of Pennsylvania would not. As to Dr. Stefanic and Masino, however, summary judgment ultimately would have been granted on the merits had they been served because Plaintiff has failed to exhaust his administrative remedies.

As noted above, all six factors need not be satisfied in order for a court to dismiss a complaint. <u>Briscoe</u>, 538 F.3d at 263. Here, three <u>Poulis</u> factors weigh heavily in favor of dismissal as to Dr. Stefanic and Masino, while four factors weigh in favor of dismissal as to the

Commonwealth of Pennsylvania. Further, Plaintiff's representations in his Response to Judge O'Neill's Order to Show Cause, as well as his repeated failure to act give the impression that he does not wish to proceed against these Defendants. Given these circumstances, the Court will dismiss Dr. Stefanic, Masino, and the Commonwealth of Pennsylvania for failure to prosecute under Rule 41(b).

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 94) will be granted. An appropriate Order follows.